## Thompson *versus* Adams et al.

93 ——— 55<br>187 US 602

1. The constitution and articles of a voluntary association, such as the Philadelphia Board of Brokers, are law as to its members.

2. A seat in the board of brokers is not property in the eye of the law, and cannot be seized in execution for the debts of the members. It is the mere creation of the board, and is to be used and enjoyed with all the limitations and restrictions which the constitution of the board chose to put upon it.

3. Under the constitution and by-laws of said board, an equitable owner of a seat, who is unknown to the association, cannot share in the proceeds of the sale of the seat. upon the death of the legal owner, as against members of the board who are creditors of the legal owner.

January 8th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county*: Of January Term 1878, No. 84.

Case stated for the opinion of the court wherein Samuel Gustine

[Thompson *v.* Adams.]

Thompson was plaintiff and Bushrod Adams and others, members of the Philadelphia Stock Exchange, late Philadelphia Board of Brokers, were defendants.

The following facts have been agreed upon as a case stated, as if found. by a special verdict of a jury, with liberty to the court below, and the court above to draw the same inferences of fact as a jury might draw, and with leave to either party to sue out a writ of error, the judgment entered to be in the nature of a judgment on a special verdict.

The Philadelphia Stock Exchange (late Board of Brokers) is an unincorporated association, governed by a constitution and by-laws, reference to the material parts of which is hereby made a part of this case stated.

Originally a seat in the board of brokers (*i. e.* the collective privileges of a full member of the board) was valuable only during the life or membership of its owner; subsequently, by the said constitution, members were allowed, under certain conditions, to transfer their seats for value, and subsequently to that a clause was added to the constitution giving value upon certain conditions to a member's seat after his death.

Section 12 of the constitution is as follows:

"     *     *     any member shall have the right to sell his membership under the following provisions:

" When any member wishes to sell his membership, the name of the proposed purchaser shall be submitted to the standing committee of the board, and on the approval of two-thirds of said committee the transfer may be made, provided the member selling has no unsettled contracts or claims against him for stock differences or borrowed money. But any member may demand a vote on such admission, and the applicant shall then be received, provided not more than fifteen black-balls be cast against him, and that not less than fifty balls be cast.

" When a member dies his seat may be sold by the secretary, and after satisfying the claims of the members of the board, the balance shall be paid to his legal representatives."

Sect. 11 of the by-laws is as follows:

" Any member who fails to comply with his contracts, or who becomes insolvent, shall immediately inform the president of the board of the fact, whose duty it shall be to give notice forthwith, from the chair, of the failure of such member, and in case of the refusal or neglect of such delinquent to make such report to the president it shall be the duty of any member having the knowledge of the fact to report the same forthwith to the standing committee or the president, who shall thereupon appoint a committee of three members, to inquire into the fact and report thereon without delay; and if said committee report the charge to be true, and the board confirm the report, said member shall be suspended;

[Thompson *v.* Adams.]

and it shall furthermore be the duty of the standing committee upon receiving information thereof, or having, directly or indirectly, any knowledge of such failure on the part of any member to comply with his engagements, as above stated, to report the same without delay to the president, and ask for the appointment of a committee, as before provided. And in case of the insolvency of any member he shall, within three days, make good to the full amount thereof all friendly loans of cash or stock from members or any overdraft on any bank. But seven days shall be allowed him in which to settle stock contracts.

" On application for re-admission, a suspended member may be restored to his seat by ballot, provided not less than fifty votes are cast, and not more than fifteen black-balls appear against him; but such application shall first be referred to the standing committee, whose duty it shall be to ascertain that the applicant has settled and arranged his affairs to the satisfaction of his creditors, and that his present situation affords a reasonable security in future transactions.

" It is expected from the applicant that he will give the committee full explanations on any disputed or unsatisfactory transactions, and at their request free access to his books and papers for that purpose.

" A suspended member shall, if reinstated, pay all fines due at the time of his suspension.

" A suspended member presenting a certificate of discharge in full of his debts under the United States Bankrupt Law, becomes eligible under the rules reinstating suspended members.

" If any suspended member fails to settle with his creditors within one year from the time of his suspension from the board, his seat shall be sold by the secretary, and the proceeds shall be paid *pro rata* to his creditors in the board.

" No expulsion or suspension of a member shall affect the rights of creditors as provided for in the constitution and by-laws."

Section 9 of the constitution is as follows:

" On the first Monday of January of each year there shall be elected a standing arbitration committee, to consist of seven members, whose duty it shall be to investigate and decide all claims and matters of difference arising between members of the board, and also to adjudicate such claims as may be preferred against members by non-members when such non-members agree in writing to abide by its decision. The decision of this committee shall be final, except in cases involving a difference of five hundred dollars, or over, when either may appeal within three days to the board for final adjudication; provided further, that upon the application of three members of the committee, any decision shall be referred to the board for final action."

Subsequently to the passage of the foregoing sections of the

[Thompson *v.* Adams.]

constitution and by-laws, on the        day of        187   , Samuel
A. Richards became a member of the board of brokers, a seat hav-
ing been duly transferred to him by a then member of the board
of brokers upon the payment to the latter of a valuable considera-
tion for the same.

The said Richards remained a member of the board until his
death, which occurred on the        day of May 1876.   Shortly prior
thereto and at the time of his death, he was indebted to various
members of the board of brokers, in the sum of $5377.17.

The seat of said Samuel A. Richards was duly sold the
day of        187   , to                        , for the sum
of        .   Upon the request of Mr. John Moss, Jr., member of
the board of brokers, and a creditor of said Richards, a meeting
of the standing arbitration committee was held on the 1st day of
June 1876, pursuant to notice, at the Philadelphia Exchange
Building, notice having been duly given to Mr. Richards's per-
sonal representatives, and to Mr. Samuel Gustine Thompson, the
plaintiff, who was present and represented himself.   Business was
transacted at the said meeting as follows, as appears by the follow-
ing copy of the minutes of the said meeting :

"In the matter of the seat of Samuel A. Richards, deceased,
sur claim of creditors.
                                "June 1st 1876.

" The committee met at the request of John Moss, Jr., Esq., a
creditor of said Richards, deceased, at 3 o'clock P. M., notice hav-
ing been duly given to Samuel G. Thompson, who was present for
himself, and to the personal representatives of Mr. Richards.
Mr. A. Sydney Biddle was present as the attorney of the Phila-
delphia Stock Exchange (late Board of Brokers).

" Mr. Biddle stated that Mr. Richards had recently died, owing
to various members of the Stock Exchange (late Board of
Brokers), $3190.88, which was the balance due his creditors in
the board, after deducting from the sum $5377.17, the whole
amount owing by him to them—the sum of $2186.29, which latter
sum had been placed in his (Moss's) hands, as treasurer of the
creditors of Mr. Richards.

" Mr. Samuel G. Thompson then stated that the money with
which the seat of Mr. Richards had been purchased, had been
furnished by him—Mr. S. G. Thompson's brother being a partner
of Mr. Richards.   When the firm of Richards & Thompson was
dissolved, Mr. Richards was given permission by him, Mr. S. G.
Thompson, to use the seat for one year, and at the end of that
time this permission was renewed, Mr. Richards at the dissolution
of the partnership having given a bill of sale of the seat, and a
power of attorney to transfer to Mr. S. G. Thompson, which the
latter still held.   The seat had until Mr. Richards's death, always

[Thompson v. Adams.]

been in Mr. Richards's name, and no notice that the seat did not belong to said Richards, or claim that it belonged to any one else, or that it had been paid for with the money of another, had ever been brought to the attention of any of the officers or members of the board, or was known to any member or officer of the society except to the said Richards. Mr. Thompson desired that the committee should not take jurisdiction of the case, but that it might be settled in court, before it had been settled by the standing arbitration committee.

"The committee decided, however, to hear the claim of the creditors of S. A. Richards, and to allow Mr. Thompson to make any claim before them if he desired to do so. Mr. Moss, on behalf of the creditors of Mr. Richards, submitted a detailed statement showing in an itemized form the sums due by Mr. Richards at his death to his various creditors in the Board, amounting in all to $5377.18, to the liquidation of which said Richards had paid $2186.29, leaving a balance due by him to his creditors of $3190.88. On motion of Mr. Backman, the committee unanimously decided that the claims, so as aforesaid presented by Mr. Moss against Mr. Richards's seat were correct, separately and in the aggregate, and decided that the said Samuel A. Richards, at his decease owed these sums respectively, to the various creditors mentioned in the statement, subject to the aforesaid credits, amounting to $2186.29, paid by him as aforesaid, making a total indebtedness, by him at his death to members of the board, of $3190.88. On motion of Mr. Stevenson, a member of said committee, it was

"'Resolved, that committee has passed upon these claims with the full knowledge that Mr. S. G. Thompson claims to be the equitable owner of the seat of Mr. S. A. Richards, deceased.

"A copy of the statement of the debts and credits presented as aforesaid by Mr. Moss to the committee is hereunto annexed, and forms part of minutes of this meeting.      JOHN S. CAPP,
                                                   Secretary.'"

"In reality Mr. Samuel Gustine Thompson, the plaintiff, had advanced to Mr. Richards the sum, to wit, $1000, with which the latter's seat in the board was purchased, and the seat had been allowed to continue in the name of Mr. Richards without notifying any officer or member of the board of brokers, that he, Thompson, was the owner of said seat, or that Mr. Richards had not paid therefor out of his own money. In fact no member or officer of the board of brokers except Mr. Richards, knew, or supposed or had any ground to suppose, that the said Richards was not, in every respect, the owner of said seat, or that he had not paid for the same wholly out of his own money.

"In July 1873, upon the dissolution of the firm, consisting of

[Thompson *v.* Adams.]

the said Richards and William E. Thompson, brother of said Samuel Gustine Thompson, a power of attorney authorizing a transfer of, and a bill of sale of said seat were handed by said Richards to the said plaintiff, dated July 3d 1873. No notice of this transfer of these documents, or any allusion thereto, was ever made by the said plaintiff, or by any one else to any member or officer of the board of brokers, until after the death of the said Richards, at which time the aforesaid debts found to be due by the arbitration committee had fully accrued, nor until that time was the fact known to or suspected by any member of the board of brokers.

" The administratrix of said Richards has duly received notice of all the facts herein contained, and waives any right to interfere in this proceeding, and hereby by her attorney expressly agrees and assents, that the said seat or the proceeds arising from the sale thereof may go to and become the property of said Samuel Gustine Thompson, if this court shall be of opinion that he is entitled to the said seat or to the proceeds thereof, as against Richards's aforesaid creditors in the board of brokers.

" The question for the decision of the court is, whether or not upon the above facts the said plaintiff is entitled to the proceeds or any part thereof, of the said seat either in full or *pari passu* with the other creditors of said Richards, who, at his decease, were members of the board of brokers, or whether the latter's claims are paramount to, and until satisfied, exclusive of any claim of said plaintiff.

" If the court shall be of opinion that the plaintiff is entitled to any portion of the said proceeds of the said seat, then judgment shall be entered in his favor for that amount with interest from June 1st 1876. But if the court be of contrary opinion, the judgment shall be entered for the defendants. The costs of the case including the price of printing the case stated, and paper-books, if a writ of error be taken, to be paid for by the unsuccessful party."

The court entered judgment for the defendants, Elcock, J., delivering the following opinion :

" The case shows that plaintiff, about          1873, gave to Samuel A. Richards, who was a partner with William E. Thompson in the business of stock brokers, the sum of $1000 to purchase a seat in the board of brokers. The seat was purchased by Richards, and he continued to hold it by plaintiff's permission, without knowledge on part of the board of any other ownership or title, until his death in May 1876. At that time he was indebted to various members of the board in the sum of $5477.17.

" Under sect. 12 of the constitution of the board, ' when a member dies his seat may be sold by the secretary ; and, after

[Thompson v. Adams.]

satisfying the claims of the members of the board, the balance shall be paid to the legal representatives.'

" The seat was accordingly sold by the secretary, and the question raised is, whether or not plaintiff is entitled to the proceeds, or any part thereof, either in full or *pari passu* with the other creditors of said Richards, who, at his decease, were members of the board of brokers, or whether the latter's claim is paramount to, and, until satisfied, exclusive of any claim of said plaintiff.

" Has plaintiff such an equitable title to said seat as would save it from the duties and liabilities attaching by the constitution and by-laws of the board to the legal holder of the title and the acting member of the board ?

" The defendants are an unincorporated association, governed by a constitution and by-laws for the mutual advantage of buying and selling stocks in an open exchange or market, and for their mutual protection and advantage in securing settlements or paying for the same.

" By sect. 12 of the constitution, a member shall have the right to sell his membership under the provisions that the name of the proposed purchaser shall be submitted to the standing committee of the board, and on the approval of two-thirds of said committee, the transfer may be made, provided the member selling has no unsettled claims against him for stock differences or borrowed money.

" Under this Richards purchased the seat of a former member, and was accepted by the standing committee.

" By the 11th by-law it is provided, upon the failure or insolvency of a member, that he shall be suspended, and shall, within three days, make good to the full amount all friendly loans of stock from members, or any over-draft on any bank, and in seven days settle all stock contracts. If a suspended member fails to settle with his creditors within one year from the time of his suspension, his seat shall be sold by the secretary, and the proceeds shall be paid pro rata to his creditors in the board.

" By sect. 9 of the constitution, a standing arbitration committee of seven members is provided, whose duty it is to investigate and decide all claims and matters of difference arising between members of the board, and also to adjudicate such claims as may be preferred by non-members, when such non-members agree, in writing, to abide by its decision, and where the differences exceed $500, provides for an appeal to the board for final adjudication.

" The ownership of a seat or membership by a person other than the occupier thereof, or the actor in the business, is not contemplated either from the nature of the business or the constitution and by-laws of the board. If the association was to permit such a holding, one of its great objects would be gone, and the mutual

[Thompson *v.* Adams.]

protection given to the claims of members in case of failure, insolvency or death of a co-member, would be defeated.

"Membership can only be constituted in accordance with the constitution of the board. Richards was, therefore, the member holding the legal title to the seat, and by reason of such legal membership, subject to all the duties and liabilities attaching thereto.

"A seat in the board is a species of property, encumbered with conditions. It is not a matter of absolute purchase, for it never was freed from the conditions and duties of the constitution and by-laws.

"The plaintiff's title can be but an equitable one, and, as between himself and the board of brokers, his title would be subject to all claims against it created by the laws of the association by reason of Richards's legal membership. His equitable title cannot rise above the legal, or be freed of the duties or liabilities imposed upon it.

"It would have been impossible for plaintiff to have had a transfer either by agreement or by legal enforcement, except under the terms of art. 12 of the constitution, which provides that the sale shall receive the assent of two-thirds of the committee, and that all contracts or claims against Richards for stock differences or borrowed money should be settled.

"A secret holding could not affect the rights of the board, without whose authority the seat or membership could not be held or transferred.

"It is ingeniously argued by plaintiff's counsel that, under rule 9, the arbitration committee can investigate and decide only upon 'differences arising between *members* of the board,' that this cannot relate to cases where members have died, thus leaving no authority to determine the claims of the co-members. This might have some weight were it not for the portion of sect. 12 of the constitution, which provides: 'Where a member dies, his seat may be sold by the secretary, and after satisfying the claims of the members of the board, the balance shall be paid to his legal representatives.'

"In Singerly *v.* Johnson, 3 W. N. C. 541, Allison, P. J., decided in a case somewhat similar that the decision of the arbitration committee was final as to the existence, validity and amount of the creditor's claim.

"The jurisdiction of the courts cannot be ousted by contract, but any person may covenant or agree that no right of action shall accrue until a thrid person has decided on any difference that may arise between himself and the other party to the covenant. The leading case upon this subject, and followed in Pennsylvania, is Scott *v.* Avery, 5 H. of L. C. 811.

"This doctrine is particularly applicable to membership in

[Thompson *v.* Adams.]

associations; and where a by-law provides for a disposition of the seats on the death of a member by action of a committee, or of the whole association, it becomes the law controlling the estate or interest passing to the legal representatives.

" The power to make sale of the seat is in the board, and even a judicial sale of the seat could not divest the claims of the board upon the proceeds, for their claim is a condition attached to the property and membership. The legal representatives have no claim upon any proceeds until the full duties of membership have been complied with in the payment of all debts due members.

" It is argued that the power of the secretary to make sale of the seat is limited to the assent of the legal representatives of the deceased member. The word *may* in the section of the constitution should, doubtless, be read *must*, because the settlement of the debts by the sale is compulsory. This right, of course, is subject to all the legal requisites of a fair sale.

" The power of the Orphans' Court is restricted by the laws of the association over the balance remaining after payment of the debts due members of the board, the legal representatives being only entitled to that, and having no right to active membership, or to make sale of the seat, except in the manner pointed out by the constitution. The debts are not regarded as liens upon the seat, but their payment in a condition under which the membership was sanctioned or granted.

" In Evans *v.* Wister, 32 Leg. Int. 354, the Supreme Court held that an attachment would not lie against the board of brokers for the proceeds of the sale of a seat of a member, he being indebted to the amount of the proceeds.

" This was an affirmance of Leech *v.* Leech, reported in 31 Leg. Int. 212.

" And in Singerly *v.* Johnson, *supra,* it was held that the death of the member did not revoke any of the rules applied to membership.

" In Hyde *v.* Woods, 4 Otto 523, s. c. 15 Nat. Bank Reg. 518, the Supreme Court of the United States determined that a provision in the constitution of the California Stock Exchange Board (similar to the one in question), that in sales of seats of delinquent members the proceeds should be applied to the benefit of the members of the board, exclusive of outside creditors, was valid, and that such claim was not a lien, but a condition of membership.

" The plaintiff invested his money, trusting to the integrity of Richards. He permitted him to exercise the rights of membership, and thus to become liable to its penalties.

" The indebtedness of Richards exceeding the proceeds of the sale of the seat, judgment must be entered in favor of the defendants on the case stated."

The plaintiff took this writ, alleging that the court erred in entering judgment for defendants.

*F. Carroll Brewster,* for plaintiff in error.—It is argued a lien is created by sect. 12 of the constitution, which provides, that " When a member dies his seat may be sold by the secretary, and after satisfying the claims of the members of the board, the balance shall be paid to his legal representatives." This section does not create a lien in favor of creditors in the board. The language is, that the secretary may sell. It simply permits him to make the sale with the assent of the legal representatives of the deceased member. The preceding part of the section requires a member, when he wishes to sell his seat, to submit the name of the proposed purchasers to a committee, and the transfer shall be made on the approval of two-thirds of the committee ; but when death occurs, the secretary may, without reference to a committee, on the request of the representatives of the deceased member, sell the seat. It was intended to obviate the necessity of referring to a committee in the event of death.

The representative of Richards never authorized or assented to a sale of the seat. If there was no sale of the seat, this section would not create a lien ; and if the secretary has no authority from the representatives of the owner to make a sale, his making one without authority will not create a lien. Has the secretary absolute power over the seat and the distribution of its proceeds ? Clearly not. The seat is recognised as property in the case stated, and if the secretary has the power claimed, he becomes an Orphans' Court, with power to sell the decedent's property, and distribute the proceeds without the assent of the representatives of the deceased member.

The Orphans' Court alone has jurisdiction : Linsanbigier *v.* Gourley, 6 P. F. Smith 172; Hammett's Appeal, 2 Norris 392. The seat at Richards's death was free from any lien. The title at his death was, it is admitted, in plaintiff below. It follows, then, that as there was no lien upon the seat at the date of his death, and none was created by his death, and as the title was in plaintiff below, he holds it free from any claims of the creditors of Richards in the board. If they have claims, they must make them against Richards's estate.

Hyde *v.* Woods, 4 Otto 523, is relied on by the learned judge to sustain the judgment of the court. This was a controversy between the vendor's assignee in bankruptcy and his transferree. The assignee alleged the transfer was a preference, and therefore void. Article 15, of the constitution of the Board of San Francisco, provides " in sales of seats for account of delinquent members, the proceeds shall be applied to the benefit of the members of the board exclusive of outside creditors, unless there shall be a balance after the payment of the claim of members in full."

The owner was a delinquent, and he authorized a sale of his seat under this article. It was clearly not a preference. The

[Thompson v. Adams.]

learned judge said, "The question turns solely on the validity of that article of the association." The position taken was that there was no reason why the stock board should not make membership subject to the rule in question.

The present case is one where no act is done by Richards as a member, because by reason of death, his membership has been dissolved and his representatives have not directed or requested a sale. If the seat be property, as held in Hyde v. Woods, the simple by-law that the secretary *may* sell, cannot create a lien. Suppose he does not sell; it cannot be said a lien exists.

*N. Dubois Miller* and *A. Sydney Biddle*, for defendants in error.—It is clear, that in this form of action, there can be no recovery. The plaintiff, who claims to have been (and, in a certain sense, was as between himself and the decedent), the equitable owner of Richards's seat, brings a common-law action against whom? Not against his debtor's (Richards's) personal representatives, but against a third person whom, at best, he can only regard as a garnishee.

The creditors of the decedent, members of the board of brokers, are the owners of the proceeds of sale of the seat, and till sold have a lien upon it, to the extent of their claims, ascertained in accordance with the terms of their constitution, which instrument alone creates the property. The proposition is not for a moment advanced that an agreement between parties can oust the court of its jurisdiction to enforce it, or punish for its violation. "When a member dies his seat may be sold by the secretary;" where there were debts owing, the word *may* must be read as equivalent to the word *shall*. In the words of the court below, the word *may* in the section of the constitution should, doubtless, be read *must*, because the settlement of the debts by the sale is compulsory. When a member dies his seat may be sold by the secretary, and after satisfying the claims of the members of the board, the balance shall be paid to his legal representatives. In other words, the *balance* of the new member's entrance-fee is to be paid to the deceased member's legal representatives. What balance? The balance that remains after satisfying the claims of the members of the board. The seat has originally no monied value. A monied value is given to it, not through its intrinsic nature, but by an agreement of the club-members, but this value is the balance; not the whole of the new member's entrance-fee.

This view has been taken in all the cases cited in the opinion of the court below. To the cases there mentioned may be added one recently decided by the Court of Common Pleas, No. 1, and on writ of error now in this court: Pancoast v. Houston, 5 W. N. C. 36. It was there held, that an outside creditor could not sell the seat of a member of the Philadelphia Stock

12 Norris—5

[Thompson v. Adams.]

Exchange, against his will and that of the exchange. Until the owner's liabilities to the other members were settled it was their property. The owner was only entitled to a balance.

No authority was ever assumed as to matters arising subsequent to the death. It is difficult to see how a question of the indebtedness of a deceased broker to a fellow broker, for business transaction, is other than a claim arising between members of the board. (See next case, Pancoast v. Gowen et al.—REP.)

The judgment of the Supreme Court was entered, January 27th 1879,

PER CURIAM.—The constitution and articles of a voluntary association, such as the Philadelphia Board of Brokers, are law as to the members. The plaintiff below was not a member, but had furnished the money by which Richards obtained a seat. His contention is that he was the equitable owner of the seat, and had title to what was received for it, and that the defendant had no right to apply the proceeds to debts due by Richards to other members, in pursuance of the terms of the constitution of the club. But why not? Richards was the member of the board, the legal owner of the seat, and the plaintiff an entire stranger, unknown to the association. The members gave credit to each other in part, no doubt, upon the faith of the liability of a member's seat to them for his debts. There is nothing unlawful or unreasonable in this regulation. The seat is not property in the eye of the law, it could not be seized in execution for the debts of the members. It is the mere creation of the board, and, of course, was to be held and enjoyed with all the limitations and restrictions which the constitution of the board chose to put upon it.                    Judgment affirmed.