## Pancoast *versus* Gowen et al., Garnishees.

A seat in the Philadelphia Stock Exchange is not property subject to execution in any form. It is a mere personal privilege or license to buy and sell at the meetings of the board. It cannot be levied on or sold under a fieri facias or attachment-execution.

January 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county*: Of July Term 1878, No. 82.

Attachment-execution by S. Pancoast against Henry Gowen and others, trading as The Philadelphia Stock Exchange, garnishees.

Upon a judgment obtained by Pancoast against Joseph L. Houston,

[Pancoast v. Gowen.]

an attachment execution was issued and served upon Gowen and others, trading as The Philadelphia Stock Exchange, as garnishees. The answers of the garnishees to the interrogatories filed admitted that Houston, the defendant in the judgment, owned a seat in the stock exchange, against which there were no claims by the members of that body at the time the attachment was issued, but they alleged that claims had since been presented, and that Houston held his seat subject to the following conditions:

"No election of new members shall take place until two weeks at least have elapsed after the application or nomination shall have been laid before the stock exchange, and the applicant shall then, upon a favorable report of the standing committee, or where, if unfavorable, the committee's report has been reversed by the stock exchange, as provided in sect. 8, be balloted for and admitted to membership, provided that not more than fifteen black-balls be cast against him, and that not less than fifty balls are cast.

"Any member shall have the right to sell his membership subject to the following conditions:

"When a member wishes to sell his membership, the name of the proposed purchaser shall be submitted to the standing committee, and on the approval of two-thirds of said committee, and after the usual two weeks' notice to the exchange, the applicant shall be balloted for, and if elected, the transfer shall be made, provided the member selling has no unsettled contracts with or claims against him by any member of the stock exchange, for transactions arising in or relating to the business of banking or a stock or exchange broker. Where the arbitration committee shall determine that such claims or contracts existed, the standing committee may, except in cases of insolvency, refuse to permit the seat to be sold until such claims or contracts are in its opinion satisfactorily settled.

"The proceeds of the seat, if sold, shall belong to its owner's creditors, who are members of the stock exchange, in proportion to the amount of their respective claims, determined by the arbitration committee, as hereinbefore provided in sect. 9. The claims of members so ascertained shall first be paid in full, and what remains, if anything, of the proceeds of the seat shall then be paid to the owner.

"When a member dies, his seat shall, within six months thereafter, be sold or transferred, and all claims against the deceased by members of the stock exchange (determined as hereinbefore provided in sect. 9, in disputes between living members) shall be paid to them in full, after which, if anything remains, it shall be paid to the personal representatives of the deceased.

"The seat of a deceased member shall be liable for all assessments which may be made by the exchange, from the day of his death until such time as his seat is sold and transferred.

"In case any member shall have begun legal proceedings against the exchange, and shall not have prosecuted the same to a successful termination, all expenses incurred by the exchange, in and during the prosecution of the suit, including counsel fees, costs of court, printing, &c., shall constitute a charge against the seat of the said member, the collection of which shall be enforced in the same manner as that now provided for the collection of fines; and upon the sale of the member's seat during his lifetime, or after his death, the said charge shall in all respects be treated as an ordinary fine.

"No member of the exchange shall be allowed to take as partner any member suspended for a violation of these rules, (during the period of his suspension), or to form a partnership with any insolvent person.

"Any member who fails to comply with his contracts, or who becomes insolvent, shall immediately inform the president of the exchange of the fact, whose duty it shall be to give notice forthwith of the failure of such member; and in case of the refusal or neglect of such delinquent to make such report to the president, it shall be the duty of any member having a knowledge of the fact to report the same forthwith to the standing committee or the president, who shall thereupon appoint a committee of three members to inquire into the fact and report thereon without delay; and if said committee report the charge to be true, and no appeal from said report be taken within seven days, or where an appeal having been taken, the report shall have been confirmed by the stock exchange, said member shall be suspended; and it shall furthermore be the duty of the standing committee, upon receiving information thereof, or having directly or indirectly any knowledge of such failure on the part of any member to comply with his engagements as above stated, to report the same without delay to the president, and ask for the appointment of a committee, as before provided. And in case of the insolvency of any member, he shall within three days, make good, to the full amount thereof, all friendly loans of cash or stocks from members, or any over-draught on any bank. But seven days shall be allowed him in which to settle stock contracts. All his outstanding, unprotected contracts shall be adjusted by the prices of the Exchange; if the failure occurs in the morning, at the second session, and if in the afternoon, at the first session of the next day.

"On an application for readmission, a suspended member may be restored to his seat, provided his name shall have been posted for two weeks, and that upon a ballot not less than fifty votes are cast and not more than fifteen black balls appear against him; but such application shall first be referred to the standing committee, whose duty it shall be to ascertain that the applicant has settled and arranged his affairs to the satisfaction of his creditors, and that

[Pancoast *v.* Gowen.]

his present situation affords a reasonable security in future transactions ; and unless and until the said committee report in favor of readmitting the said suspended member, he shall be held to be still in default, and no vote to restore him to his seat shall be had.

" It is expected from the applicant that he will give the committee full explanations of any disputed or unsatisfactory transactions, and, at their request, free access to his books and papers for that purpose.

" A suspended member shall, if reinstated, pay all the fines due at the time of his suspension.

" Any member who shall become a bankrupt by his own act, or that of his creditors, shall *de facto* be suspended from the stock exchange ; but a suspended member presenting a certificate of discharge under the United States Bankrupt Law becomes eligible under the rules reinstating suspended members.

" If any suspended member fails to settle with all his creditors within one year from the time of his suspension from the stock exchange, his seat shall be sold by the secretary, and the proceeds shall be paid *pro rata* to his creditors in the stock exchange. That amount due said creditors shall be determined by the arbitration commitee, in the manner hereinbefore provided in section IX. of the constitution.

" No expulsion or suspension of a member shall affect the rights of creditors, as provided for in the constitution and by-laws."

The answers further set forth : " The garnishees are of opinion, and so aver, that at the service of this writ they held no property of any kind, attachable at the suit of the plaintiff, belonging to Joseph L. Houston, the seat belonging to him not being property, except between members of the Philadelphia Stock Exchange."

Two rules were taken, one by the plaintiff, against the garnishees for judgment on the answers, and the other by the garnishees on the plaintiff to show cause why the attachment should not be dissolved. After argument of both rules, the court discharged the first, and made the last absolute, " so far as the seat or membership of the defendant in the Philadelphia Stock Exchange is concerned." Subsequently, the plaintiff filed a written admission that the garnishee was not in possession of any property of the defendant, liable to attachment sur judgment, other than the defendant's seat or membership in the Philadelphia Stock Exchange. Whereupon, on motion of counsel for garnishees, the court, Allison, P. J., made absolute the rule to dissolve the attachment, in an opinion, saying : " The words of the constitution of the stock exchange show that the seat, or right of membership, is property, since it is held as security for payment of debts due members of the board. But it is the property of the Philadelphia Stock Exchange until all questions of claims against its owner by

[Pancoast *v.* Gowen.]

members of the board are settled. Until we have some means of knowing that all such claims have been fully settled, or that none exist, we do not think an attachment could be lawfully issued against the board, or the privilege sold."

The plaintiff took this writ, alleging that the court erred in making absolute the rule dissolving the attachment.

*P. F. Rothermel, Jr.,* for plaintiff in error.—The seat of a member of the Philadelphia Stock Exchange is property and not a mere personal right. By the terms of the constitution of the stock exchange, which forms the contract between that institution and the owners of seats therein, it is provided that "any member shall have the right to sell his membership subject to the following conditions." This provision of itself determines that it is property; the fact that the seat is the subject of purchase and sale, that it may be transferred from one person to another, conclusively establishes that it is not a mere personal right. In fact the point has been recently decided in the United States Supreme Court, in Hyde *v.* Woods, 4 Otto 523, where the learned judge, who delivered the opinion of the court, speaks of a seat in the San Francisco Stock and Exchange Board, subject to conditions similar to those attached to the one in question.

If the seat is personal property it would seem to follow as a necessary consequence, that it is liable to execution. The policy of the law is certainly opposed to exempting the property of a debtor from execution. The only question therefore remaining to be considered is, whether the conditions annexed to ownership are such as to defeat this natural implication. The effect of these provisions is simply to render the seat a pledge in the hands of the stock exchange, as security for liability of the owner to that body and the other members of it; and it is by reason of this effect that under the Act of Assembly the seat is the subject of attachment-execution: Act of June 16th 1836, Purd. Dig. 630, pl. 32.

*N. Dubois Miller, A. Sydney Biddle* and *George W. Biddle,* for defendants in error.—It cannot be contended that the purely personal privilege of belonging to a certain club or association of individuals for any purpose, whether of a social or business character, is in any sense property which is liable to be taken in execution. The constitution does not say that a member shall be entitled to the proceeds of a seat. It distinctly says that "the proceeds of the seat, if sold, shall belong to its owner's creditors who are members of the stock exchange;" and the only property that the member can have at all is the balance of the proceeds, if any such exists. There may never be any balance; then there will never be any money due the retiring member, and no debt

[Pancoast *v.* Gowen.]

which can possibly be attached. The seat has not been sold. Clearly, then, there is no balance of money due, no debt owing to the debtor. Have the members of the stock exchange any of his property, any goods or chattels pawned or pledged with them ? The record discloses none. Has he any right of action under any contract ? No ; the only contract that exists is one by which they mutually agree that for each other's benefit they will trade in certain ways and with certain people, and the contract has not yet been broken ; there is not, therefore, even a right to damages for breach of contract. The decision of the lower court is in keeping with the line of decisions : Evans et al. *v.* Wister, 1 W. N. C. 181; Singerly *v.* Johnson, 3 Id. 341; Leech *v.* Leech, Id. 542. This case is ruled by Thompson *v.* Adams, *ante*, p. 255.

The judgment of the Supreme Court was entered, February 24th 1879,

PER CURIAM.—A seat in the board of brokers is not property subject to execution in any form. It is a mere personal privilege, perhaps more accurately, a license to buy and sell at the meetings of the board. It certainly could not be levied on and sold under a fi. fa. The sheriff's vendee would acquire no title which he could enforce, nor is it within either the words or the spirit of the Act of June 16th 1836, sect. 35, Pamph. L. 767, providing for attachment on judgment. Whether the proceeds of the sale of the seat in the hands of the treasurer of the board, and payable to the defendant, according to the regulations and by-laws of the board, could be thus reached is an entirely different question. This, and no more, is what we understand to have been decided by the Supreme Court of the United States, in Hyde *v.* Wood, 4 Otto 525, where Mr. Justice Miller says, "If there had been left in the hands of the defendants any balance after paying the debts due to the members of the board, that balance might have been recovered by the assignee" in bankruptcy.

Order dissolving the attachment affirmed.