## In re PAGE.

(Circuit Court of Appeals, Third Circuit.   March 22, 1901.)

### No. 14.

BANKRUPTCY—ASSETS—SEAT IN STOCK EXCHANGE.

>Bankr. Act 1898, § 70, declares that the bankrupt's trustee on his appointment and qualification shall be vested with the bankrupt's title to all property which prior to the filing of the petition the bankrupt could by any means have transferred.   Philadelphia Stock Exchange Rules, art. 11, § 4, provides that any member wishing to sell his membership shall have the right to do so, provided he has no unsettled contracts with, or claims against him by, any member of the stock exchange, etc.,—subject, however, to the approval of the proper authorities of the exchange. *Held,* that a bankrupt having no unsettled accounts with members of the exchange at the time of filing his petition in bankruptcy could have transferred his seat, which was a valuable right, within section 70, and hence such right of transfer passed to his trustee in bankruptcy, who was entitled to sell the same as part of the bankrupt's assets.[1]

Petition for Review of Proceedings in the District Court of the United States for the Eastern District of Pennsylvania.

In Bankruptcy.   For opinion below, see 102 Fed. 746.

George W. Jacobs, Jr., for bankrupt.

Henry R. Edmunds, for trustee.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge

BRADFORD, District Judge.   The question before us for decision arises on a petition for a review of certain proceedings in bankruptcy in the district court for the eastern district of Pennsylvania.   Edward D. Page was adjudicated by that court a voluntary bankrupt November 16, 1899, being at the time a member of the Philadelphia Stock Exchange, an unincorporated society.   He became such member in 1880, paying for his seat or membership about $5,500.   It is now valued at $8,000.   His membership or seat was not included as an asset in the schedules attached to his petition in bankruptcy.   The trustee in bankruptcy, however, caused the seat to be appraised and on his petition the referee ordered that the same be sold at public auction subject to the constitution and by-laws of the exchange regulating membership therein.   The district court upon review approved the order made by the referee and directed the trustee to proceed with the sale.   The case is now before us on the petition of the bankrupt, and the precise point for determination is whether or not title to the membership or seat vested in the trustee.   Section 70 of the bankruptcy act of 1898 provides, among other things, that, subject to a certain proviso and exceptions not material to the present inquiry, the trustee of the estate of a bankrupt shall upon his appointment and qualification be vested by operation of law with the title of the bankrupt, as of the date of the adjudication, to all "property which prior to the filing of the petition he could by any means have

---

[1] Franchises and licenses as assets in bankruptcy, see note to Ficher v. Cushman, 43 C. C. A. 389.

transferred." The provisions of the constitution of the exchange relating to membership and its transfer are as follows:

## "Article 5.

Sec. 4. A Committee on Admissions, consisting of five members, to which all applications for membership, transfer of membership and re-admissions of suspended members shall be referred. It shall be its duty to inquire into the general standing of the applicant, and make a report thereon to the Governing Committee within one month of the presentation of the application. Until the committee makes a report favorable to the admission of the applicant, he shall not be voted for as a member, unless upon the written application of seven (7) members of the Governing Committee to the President, made within five (5) days after the committee's report has been presented; in which case the Governing Committee may, by a two-thirds vote, reverse the report of the committee, and such reversal shall have the same effect as if the committee's report had originally been favorable. If a report be favorable, the name of the candidate shall be posted in the Stock Exchange, and notice given that a ballot will be taken at the next stated meeting of the Governing Committee in order that every member of the Exchange may have an opportunity of objecting to the candidate's election; such objection shall be in writing to the President of the Governing Committee. The election of candidates for membership shall be held by the Governing Committee, but no election shall be valid unless at least eighteen (18) ballots be cast; and if five (5) ballots be cast against a candidate he shall be declared not elected.

## Article 11.

Sec. 1. The number of members shall be limited to two hundred and thirty (230).

Sec. 4. Any member wishing to sell his membership shall have the right to do so, provided he has no unsettled contracts with or claim against him by any member of the Stock Exchange, for transactions arising in or relating to the business of banker or a stock or exchange broker; but, where the Arbitration Committee shall determine that any claims or contracts exist, the Governing Committee may, except in cases of insolvency, refuse to permit the membership to be sold, until such claims or contracts are, in its opinion, satisfactorily settled. The proceeds of the membership, if sold, shall, after deducting all charges due to the Exchange to be determined, in cases of controversy, by the Arbitration Committee, belong to its owner's creditors in the Exchange, in proportion to the amount of their respective claims, determined by the Arbitration Committee, as hereinbefore provided in Section 5, Article V, and be paid accordingly; and the remainder, if any, shall be paid to the owner.

Sec. 5. When a member dies, his membership shall, within one year thereafter, be sold or transferred; if, however, he be indebted to any member of the Stock Exchange, then, on the written request of two-thirds of the creditors in interest, said membership shall be sold, at the discretion of the Committee on Admissions, and the proceeds thereof, after deducting all charges due to the Exchange, to be determined in case of controversy, by the Arbitration Committee, shall be paid to its owner's creditors who are members of the Exchange, in proportion to the amount of their respective claims, determined as hereinbefore provided in Section 5, Article V, as to disputes between living members; and the remainder, if any, shall be paid to the legal representatives of the deceased. The membership of a deceased member shall be liable for all dues and assessments which may be made by the Exchange from the day of his death until such time as his membership is transferred.

Sec. 8. Membership in the Exchange shall, ipso facto. terminate in either of the following cases:

1. Fraud in any transaction arising out of the member's business as a banker or broker.

2. Conviction, by a jury, of any infamous offense or felony. And the commission of the offense shall be ascertained in each case, after notice and opportunity for hearing, by a vote of two-thirds present (being a majority of the whole number) of the Governing Committee.

3. Suspension from the Stock Exchange for any cause, and inability for one

year thereafter to comply with the constitution, by-laws and rules as to eligibility for reinstatement.

Sec. 9. Upon such termination of membership, the said membership shall be sold, at the discretion of the Governing Committee, and the proceeds, after deducting all charges due the Exchange and all debts due to creditors in the Exchange—which amounts shall be determined by the Arbitration Committee —shall be paid to the expelled member, his heirs or assigns.

### Article 12.

Sec. 6. Any member who shall be declared a bankrupt shall, ipso facto, be suspended from the Stock Exchange; but a suspended member, presenting a certificate of discharge under the United States bankrupt law, becomes eligible under the rules for re-instating suspended members.

Sec. 7. If any suspended member fails to settle with all his creditors within six months from the time of his suspension, his membership may be disposed of by the Committee on Admissions, and must be sold at the end of twelve months; and the proceeds, after deducting all charges due to the Exchange to be determined, in cases of controversy, by the Arbitration Committee, shall belong and be paid to his creditors in the Exchange in accordance with Section 3.

Sec. 11. The proceeds arising from the sale of the membership of an insolvent shall be divided pro rata by the Arbitration Committee among the creditors recorded, as in Section 3, and if any balance remain it shall be paid over to the insolvent."

The by-laws do not contain any provision relating to membership or its transfer. The cases principally relied on by the bankrupt, in support of his contention that title to the seat or membership did not pass to the trustee, relate to the Philadelphia Stock Exchange, and are Thompson v. Adams, 93 Pa. 55, and Pancoast v. Gowen, 93 Pa. 66. The court, in the former case, said that "the seat is not property in the eye of the law, it could not be seized in execution for the debts of the members," and, in the latter, that "a seat in the board of brokers is not property subject to execution in any form." In Thompson v. Adams it appears that Richards took the legal title to a seat or membership in the exchange, Thompson furnishing to him the purchase money. Richards died indebted to sundry members of the exchange in amounts exceeding in the aggregate such purchase money, and was at the time of his death the only known owner, legal or equitable, of the seat. Nor had his creditors in the exchange any knowledge or notice that his seat had been paid for with the money of another. Pursuant to the provisions of the constitution the seat was sold by the secretary for a sum less than Richards' indebtedness to the members of the exchange, and the point to be determined was whether Thompson was entitled as against such creditors to the whole or any portion of the proceeds of sale. It was held that he was not; the constitution providing that when a member died his seat might be sold by the secretary and that the balance of the proceeds after satisfying the claims of the members of the board should be paid to his legal representatives. In Pancoast v. Gowen an attachment execution was issued on a judgment obtained by Pancoast against Houston and was served upon the members of the Philadelphia Stock Exchange as garnishees, who admitted that the defendant owned a seat in the exchange but averred that "at the service of this writ they held no property of any kind, attachable at the suit of the plaintiff, belonging to Joseph L. Houston, the seat

belonging to him not being property, except between members of the Philadelphia Stock Exchange." It was held that the seat was not subject to the attachment execution. The points actually determined in these two cases do not support the unqualified dictum contained in one of them that "the seat is not property in the eye of the law." In Barclay v. Smith, 107 Ill. 349, it was held that a certificate of membership in the board of trade of the city of Chicago was not property liable to be subjected by a creditor's bill to the payment of the debts of the holder. The language of the court certainly went very far. Although the certificate of membership was "regarded in the market as worth $4,000," it was said that it did not come within any definition of property, and was not property at all, but a "mere privilege conferred upon the member." In Weaver v. Fisher, 110 Ill. 146, it was held, however, that a bill in chancery would lie to compel the surrender of a certificate of membership in the Chicago board of trade which had been procured with the complainant's money, but taken in the name of the defendant, who was her agent. The court, among other things, said:

"It is misapprehension to suppose, as counsel for plaintiff in error seem to, that we held in Barclay v. Smith, 107 Ill. 349, that there are no property rights of any kind in a certificate of membership in the board of trade of the city of Chicago. We simply there held that such a certificate is not property which is liable to be subjected to the payment of the debts of the holder by legal proceedings. * * * It can not be said, here, that we must, from the nature of this corporation, hold there can be no pecuniary value in a certificate of membership, because the proof shows the contrary with absolute certainty. It has a regular pecuniary market value, notwithstanding the conditions to which the transfer of its title is subject."

The material inquiry before us is, not whether the seat could have been attached or taken in execution, but whether it was not property which Page prior to his bankruptcy could have transferred. The bankrupt act vests in the trustee the title not only to the property of the bankrupt which prior to the filing of the petition "might have been levied upon and sold under judicial process against him," but, as has been stated, to property which prior to that time "he could by any means have transferred." The membership or seat of the bankrupt in the exchange certainly was of pecuniary value to him and, subject to the restrictions and limitations of the constitution, could have been transferred by him to another. Section 4 of article 11 provides that "any member wishing to sell his membership shall have the right to do so, provided he has no unsettled contracts with or claim against him by any member of the Stock Exchange, for transactions arising in or relating to the business of banker or a stock or exchange broker." It appears that the bankrupt had at the time of the adjudication no such unsettled contracts or claims against him, and that the value of his seat or membership amounted to a substantial sum of money. It is true that the approval of the proper authorities in the exchange was necessary to a valid transfer of the membership, and that, as such approval might or might not be withheld, this requirement might prevent a transfer to a given person. This contingency possibly affected the value of the seat for the purposes of sale, but, while restricting, did not destroy its transferability.

The membership was more than a mere privilege. It was property vested in Page and transferable to any person meeting the approval of the exchange. On principle we perceive no reason why the seat of the bankrupt was not embraced in "property which prior to the filing of the petition he could by any means have transferred." We are aware that in the case of In re Sutherland, 23 Fed. Cas. 453 (No. 13,637), Judge Blodgett held that under the bankruptcy act of 1867 membership in the Chicago board of trade was not an asset which passed to an assignee in bankruptcy. The authorities to the contrary, however, are quite conclusive. Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264; In re Ketchum (D. C.) 1 Fed. 840; In re Warder (D. C.) 10 Fed. 275; In re Werder (C. C.) 15 Fed. 789; Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915.

The order of the court below under review is affirmed.