### In re MYERS–WOLF MFG. CO.

### KUHN v. GUILD.

(Circuit Court of Appeals, Third Circuit.   May 21, 1913.)

No. 1,740.

BANKRUPTCY (§ 266*)—PROPERTY VESTING IN TRUSTEE—SALE—PATENTS—APPLICATIONS.

Bankr. Act July 1, 1898, c. 541, § 70, cl. a2, 30 Stat. 565, 566 (U. S. Comp. St. 1901, p. 3451), vests in a bankrupt's trustee all interests, patents, and patent rights owned by the bankrupt, and clause a5 all property which, prior to the filing of the petition, the bankrupt could by any means have transferred. *Held*, that the trustee on his appointment became vested with patents and applications therefor owned by the bankrupt, and the same having been sold with other property by the bankrupt's receiver, concurred in by the trustee on his appointment, and the sale having been confirmed by the referee, a joint transfer by both vested the bankrupt's entire property in them in the purchaser, who would therefore be required to complete the purchase.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 266.*]

Appeal from the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

In the matter of bankruptcy proceedings of the Myers-Wolf Manufacturing Company. Proceeding by Frederick F. Guild, trustee, to

compel Isadore Kuhn to comply with his contract to purchase certain machinery and other chattels of the bankrupt, including several patents and applications therefor. From an order in favor of the trustee, the purchaser appeals. Affirmed.

Bilder & Bilder, of Newark, N. J., for appellant.
Roland D. Crocker, of Newark, N. J., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. On November 21, 1910, Frederick F. Guild, who was then the receiver in bankruptcy of the Myers-Wolf Manufacturing Company, acting under an order of the court below, sold certain machinery and other chattels of the bankrupt, and sold also several patents and applications for patents; the latter being struck down to Isadore Kuhn for $1,162.50. Upon the receiver's return the court confirmed the sale on November 25th, and ordered the proper conveyance to be made. This has not been done, because Kuhn has paid only $300 on account, having declined to make good the rest of his bid; his reason for noncompliance being a doubt concerning a receiver's power to make title to such property as patents and applications for patents. In order to quiet the doubt, Guild (who qualified as trustee soon after the sale) asked the referee for authority to execute a conveyance as trustee in confirmation of what he had done as receiver. After notice to creditors, the referee made the desired order on March 21, 1911, and the trustee attempted to carry it out, tendering the conveyance to Kuhn and demanding payment. But Kuhn persisted in refusing, and Guild applied again to the referee, asking for an order expressly directing compliance. A rule to show cause was granted in October, 1911, and after testimony taken and a hearing had in the following January the referee made the rule absolute, and ordered Kuhn "to pay forthwith to the said receiver the sum of $862.50, together with interest thereon from March 21, 1911." Upon Kuhn's demand this order was certified to the District Court for review, where it was affirmed on December 14, 1912. This order of affirmance has been brought before us both by appeal and by petition to revise, but as we have not been asked to determine which is the more appropriate proceeding we shall pass that question sub silentio.

Objection is now urged, inter alia, to several asserted irregularities of procedure that antedated the sale; but these will not be considered. They should have been brought to the District Court's attention before the sale was confirmed, or perhaps by direct attack on the order of confirmation. They cannot be objected to collaterally and by indirection. But we think it is proper in the present proceeding to raise the question whether the receiver's sale, or the subsequent confirmatory order, authorized Guild to transfer to Kuhn anything valuable for which he should now be obliged to pay. Obviously, if Kuhn has not acquired the bankrupt's title to the patents and the applications, he is not bound by his offer; his money is the equivalent of what he bid for at the sale, and if he cannot be clothed with the title he bid for, he should not be compelled to part with the price. Under the fore-

going facts, the receiver and the trustee both offering to join in the conveyance, we do not think it necessary to decide whether this kind of property can be validly transferred at a receiver's sale. On this question the cases differ. Several district courts have considered it (Re McDonnell [D. C. Iowa] 101 Fed. 239; Re Dann [D. C. Ill.] 129 Fed. 495; and Re Cantelo Mfg. Co. [D. C. Me.] 185 Fed. 276); and there is a dictum by the Court of Appeals of the First Circuit in Fisher v. Cushman, 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292. We shall not discuss these decisions; they contain excellent and careful examinations of the question from several, and in some respects from opposing, points of view Our own opinion is briefly this:

Section 70 of the bankruptcy act, either by clause a2 or by clause a5 (Act July 1, 1898, c. 541, 30 Stat. 565. 566 [U. S. Comp. St. 1901, p. 3451]), vests in the trustee the bankrupt's interest, both in patents and in applications for patents. Clause 2 ("interests in patents, patent rights * * *)" and clause 5 ("property which prior to the filing of the petition [the bankrupt] could by any means have transferred") are so inclusive in their scope that we do not see how any valuable interest of a bankrupt, either in an application or in a patent, can possibly escape them both; and we think it unimportant to determine which of the two clauses should be regarded as the more effective. Intangible rights—such as a license to sell liquor (Re Becker [D. C. Pa.] 98 Fed. 407; Fisher v. Cushman [C. C. A.] 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292; Re Wiesel [D. C. Pa.] 173 Fed. 719); a license to use a market stall (Re Emrich [D. C. Pa.] 101 Fed. 231); and a seat on a stock exchange (Re Page [D. C. Pa.] 102 Fed. 746, affirmed [C. C. A. 3d Circuit] 107 Fed. 89, 46 C. C. A. 160, 59 L. R. A. 94, affirmed s. c., 187 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318)—have been held to be the subjects of sale in bankruptcy; and we see no insuperable difficulty in selling a bankrupt's interest in an application or in a patent. If an application is not an interest in a patent, although the issue of a patent is the very object of the application, and if it is not property of any kind, although buyers are often found who are willing to pay a good deal of money for the right, it is not easy to see where the right arising out of an application should be classified. Moreover, Congress has expressly recognized it as valuable, for sections 4895 and 4898 of the Revised Statutes (U. S. Comp. St. 1901, pp. 3385, 3387) authorize the transfer of the right and indicate a method of transfer. It may be, also, that section 70 of the Bankruptcy Act has provided an additional method of transferring the inchoate right, namely, by operation of law in invitum, and that such method may be effective where the inventor has not himself assigned such right; but we need not decide this particular point in the present case, involving as the point does the further question how the additional method might be made effective against an unwilling inventor. These matters do not require consideration now, for the manufacturing company is not the inventor, but the assignee of the inventor; and the applicant's inchoate right has therefore passed from him by his voluntary act. If the receiver's sale was not effective to pass the title, the confirmatory order to the trustee cures the defect.

When Guild shall have conveyed to Kuhn the bankrupt's interest in the patents and in the applications, Kuhn will have received all he bid for and all he is entitled to receive. In substance, therefore, the order appealed from is right; but we shall modify it slightly, so as to provide that Guild, both as receiver and as trustee, first tender to Kuhn a conveyance of the patents and the applications in question, and thereupon that Kuhn pay the sum specified in the order of the District Court.

Thus modified, the order is affirmed.