## McLaughlin's Estate.

*Maynard Teall* and *Reed, Smith, Shaw & McClay*, for exceptant.

*O. K. Eaton*, contra.

CHALFANT, J., March 13, 1930.—Decedent, a widower, died Jan. 28, 1929, after an illness of three months which confined him to his home, but not to his bed. He executed his will on May 26, 1928, and it was duly probated and letters testamentary issued. He bequeathed $5000 to his daughter, who is an only child, and, after some charitable bequests, gave the residue to his executors in trust for her with power of consumption of the principal. On Dec. 12, 1928, he requested his nurse to summon his daughter, who was living at his home, and when she came he said he wanted to turn over to her his seat in

the Pittsburgh Stock Exchange, and asked for pen and ink. When these were produced he dictated to his daughter and she wrote the following: "Dec.—28. Please give my daughter, Mary Louise McLaughlin Sterrett, my seat in the exchange." He then signed his name to the paper and delivered it to his daughter, who kept it until June, 1929, when it was delivered to the Pittsburgh Stock Exchange for transfer, accompanied by an application for membership and the required fee as provided by the by-laws of the exchange. On July 19, 1929, and before any action had been taken on the application, the executors filed their inventory, in which was included the seat in the exchange. The daughter then presented her petition to this court at No. 689, September Term, 1929, claiming ownership of said seat and asking that it be decreed to her as her property, to which an answer was filed and testimony was taken in connection with the audit of the first and final account of the executors, which was filed at No. 323, October Term, 1929, and to which she had filed exceptions raising the same question of ownership. All debts of the decedent have been paid.

There can be no doubt as to the intention of the decedent to transfer the seat to his daughter, and the questions are whether the seat is property, and, if not, is it of such a nature that it is susceptible of a gift, and is the paper which he executed, together with his expressed oral desire, sufficient to constitute a gift *inter vivos*.

In Thompson v. Adams, 93 Pa. 55, which case involved a seat in the Philadelphia Stock Exchange, our Supreme Court said: "The seat is not property in the eye of the law; it could not be seized in execution for the debts of the members. It is the mere creation of the board, and, of course, was to be held and enjoyed with all the limitations and restrictions which the constitution of the board chose to put upon it." In this case, however, the owner of the seat had died owing various sums to other members of the board, and the seat had been sold by the exchange, and the question was, whether the proceeds of the sale should go to member creditors or to an outsider, who claimed to have furnished the money to buy the seat. The court decided that the fund should go to the creditors.

The principle above quoted was approved in Gartner v. Pittsburgh Stock Exchange, 247 Pa. 482, where the owner of the seat was in bankruptcy and his seat was sold by the exchange and the proceeds applied to members of the exchange who were creditors. A brother of the member claimed that the seat had been pledged with him as collateral for a loan, and brought suit against the exchange for the value of the seat.

In Pancoast v. Gowen, 93 Pa. 66, which involved a seat in the Philadelphia exchange, the court said: "A seat in the board of brokers is not property subject to execution in any form. It is a mere personal privilege, perhaps more accurately, a license to buy and sell at the meetings of the board. It certainly could not be levied on and sold under a *fi. fa.*" In this case an execution attachment on a judgment against a member was issued and the stock exchange summoned as garnishee, and the court dissolved the attachment.

While these cases hold that such a seat is not property, there is nothing to indicate that it is of such a nature as not to be the subject of a sale or gift. On the other hand, our Federal courts, including the United States Supreme Court, have held that such a seat is property. In the case of In re Stringer, 253 Fed. Repr. 352, a question arose as to whether a seat on the New York Stock Exchange was a firm or an individual asset, and the court in its opinion said: "Before considering that question, it may be pointed out that a differ-

ence of opinion has existed in the courts as to whether a seat or membership in a stock exchange, or merchants' exchange, or board of trade is property which, if fraudulently conveyed or assigned, may be reached in equity by creditors. That the creditors cannot reach it seems to have been held in Barclay *v.* Smith, 107 Ill. 349, . . . Pancoast *v.* Gowen, 93 Pa. 66 [citing other cases]. But whatever may have been thought at one time on this subject, the Supreme Court of the United States has settled the matter that membership in a stock exchange is property which passes to a trustee in bankruptcy as assets of the bankrupt's estate: Page *v.* Edmunds, 187 U. S. 596; Hyde *v.* Woods, 94 U. S. 523 [and other cases cited]. While such property is peculiar and in its nature a personal privilege, yet such value as it may possess, notwithstanding the restrictions to which it is subject, is held to be susceptible of being realized by creditors."

The Pittsburgh Stock Exchange is a corporation of the first class chartered by the Common Pleas Court of Allegheny County under the Act of April 29, 1874, P. L. 73, and its supplements, and its purpose is to furnish the usual facilities for the transaction of the business of its members in buying, selling and dealing in stocks, bonds and other securities. That the members of this exchange consider a seat of such a nature that it can be sold and transferred appears from the following quotation from the charter and by-laws:

Article IX of the amended charter provides: "The corporation shall have the right to admit, expel, suspend or fine such members as it may see fit in the manner to be prescribed in the by-laws thereof."

Article XI. "A membership may be transferred upon the terms, conditions and in the manner prescribed in the by-laws, subject to the discharge of obligations," etc.

Article XII. "In case of death of a member, his legal representative shall for the period of one year have the right to transfer his membership as provided in the case of ordinary transfer. . . .'

Article IV of the by-laws. "Any member wishing to sell or transfer his membership shall have the right to do so, provided he has no unsettled contracts against him with the exchange," etc.

Sec. 2. "When any member wishes to transfer his membership he shall deposit with the committee on membership his resignation and the application of the transferee in the form prescribed for admission to membership," etc. Then follow requirements as to notice to members and report of committee to the board of directors for approval.

We, therefore, conclude from the foregoing that, whether the seat be styled as property, personal privilege or license, or by some other designation, it is capable of being sold or given away. The fact that the donee or purchaser might not be able to succeed to the privileges of the member would not avoid the gift as between donor and donee. In considering this case we have not lost sight of the proof necessary to uphold a gift *inter vivos*, as laid down in Turner's Estate, 244 Pa. 568, and the many other cases in which this subject is discussed by our appellate courts; but we do not think that the circumstances under which this gift was made and the nature of the property given, and especially the relation between the parties, require the same amount of proof as the general run of these cases. Testator had made his will in May, 1928, and in that his daughter was the main object of his bounty, and while the greater portion of his estate was bound by a trust, it was for her benefit and the trustees had the power of expending the whole of the principal and income for her use. From October, 1928, until his death, testator was confined to his room. He had no certificate or other evidence of his ownership

of the seat which required an assignment or transfer by him. He did everything in support of his intention to part with his ownership, unless it was his resignation, and we believe what he did was equivalent to this.

Our courts have repeatedly held that a valid gift *inter vivos* can be made even though there remains something to be done to make the actual transfer. In Com. *v.* Crompton, 137 Pa. 138, the court said: "It is now settled that a valid gift of non-negotiable securities may be made by delivery of them to the donee without assignment or endorsement in writing. This principle has been applied to notes, bonds, stock and deposit certificates and life insurance policies." This case is cited as late as Connell's Estate, 282 Pa. 555, and the same principle is laid down in Shaffer *v.* Hoke, 80 Pa. Superior Ct. 434. Our courts have also ruled that in cases involving gifts *inter vivos* all the circumstances must be considered. In Packer *v.* Clemson, 269 Pa. 1, we find this principle laid down: "In determining whether there was a valid gift, we must confine our inquiry to what transpired at the time the gift was supposed to have been made. . . . Words, phrases and acts must receive their usual and accepted meaning without strained inferences or constructions." And in the case of Leadenham's Estate, 289 Pa. 216, Mr. Justice Walling in his opinion said: "While the change of possession may be either actual or constructive, it must be such as is consistent with the nature of the property and the situation of the parties. . . . Less proof of a gift to a near relative is required than of one to a stranger." In Yeager's Estate, 273 Pa. 359, cited in Leadenham's Estate, *supra,* the court said: "To establish a gift *inter vivos* as here alleged two essential elements must be made to appear: an intention to make the donation then and there, and an actual or constructive delivery at the same time, of a nature sufficient to divest the giver of all dominion and invest the recipient therewith: ˙Reese *v.* Philadelphia Trust Co., 218 Pa. 150; Ashman's Estate, 223 Pa. 543. The quality and quantity of proof required to meet this obligation varies greatly, depending upon the circumstances of the particular case. Where the parties are strangers, the presumption against voluntary transfers is greater than in transactions between those holding more intimate relations. If the gift is from husband to wife (Crosetti's Estate, 211 Pa. 490), or parent to child (Langdon *v.* Allen, 1 W. N. C. 395), the action of the donor is viewed as but natural and less evidence is required to establish the intention."

The gift in the instant case was from a father to his only child, and the proof required is not so strict as if it had been to a stranger. If, in order to part title with his ownership in the seat, the owner must conform to all the requirements for transfer, decedent's attempt to give the seat to his daughter would fail; but we do not believe he was so required, and especially as between him and his daughter. We, therefore, find that the gift of the stock exchange seat was a valid one, and the first and second exceptions will be sustained.

In this estate the stock exchange seat was appraised in the inventory at $15,000. In their account, the executors charge a commission of 5 per cent. on the amount of the *corpus*. Exceptions were filed by Mary Louise McLaughlin Sterrett to the allowance of commissions based on the value of the said seat, and, since we have found that the seat was not a part of the estate, the executors would not be entitled to a commission based on the value thereof, and the third exception will be sustained and accountants will be surcharged with 5 per cent. of $15,000, or $750.

Let a decree be prepared accordingly.

From William J. Aiken, Pittsburgh, Pa.