JOHN P. VAN NESS, APPELLANT, *vs.* ALPHEUS HYATT AND OTHERS, APPELLEES.

The principle of the common law undoubtedly is, that no property but that in which the debtor has a legal title is liable to be taken in execution; and, accordingly, it is well settled in the English Courts, that an equitable interest is not liable to execution. In the United States, different views have been taken of this question in the Courts of the several states. Except, as against the mortgagee, the mortgagor is regarded as the real owner of the property mortgaged; and this rule has very extensively prevailed in the states of the United States, that an equity of redemption is vendible as real property on an execution; and that it is also chargeable with the dower of the wife of the mortgagor.

The equity of redemption of a mortgagor of land in that part of the District of Columbia, ceded by the state of Maryland to the United States, cannot be taken in execution under a fieri facias. At the time of the cession to the United States, the rule of the common law was the law of Maryland.

It is not necessary to refer to authorities to sustain a proposition that a chose in action is not liable to be levied on by a fieri facias.

APPEAL from the Circuit Court of the United States, for the county of Washington, in the District of Columbia.

In November, 1836, the appellant filed a bill in the Circuit Court against Alpheus Hyatt and others. The following were the important facts in the case, as sustained by the evidence:

In December, 1818, William Cocklin leased to James Shields a lot of ground in the city of Washington, for ten years, from January 1st, 1819, for the rent of thirty-five dollars per annum. The lessee covenanted to erect and build, within twelve months, a two-story brick house upon the lot; and the parties agreed, that if at or before the expiration of the lease, the lessee should pay to the lessor the sum of three hundred and seventy-five dollars, the rent should cease, and so if a portion or part of the sum of three hundred and seventy-five dollars should be paid within the time, the rent should be diminished according to the sum or sums paid. On the payment of the whole of the sum, William Cocklin was to make to the lessee a good and sufficient title in fee simple to the lot.

James Shields, on the 23d of September, 1823, mortgaged the lot and improvements upon it to John Franks, to secure a debt of $1127; and on the 7th day of May, 1825, the mortgagee assigned all his right and title under the mortgage to Alpheus Hyatt, one of the appellees; and on the 9th day of May, 1825, James Shields released all his interest in the lot to Alpheus Hyatt, for the consideration of two hundred dollars. Subsequently, in May, 1826, Alpheus Hyatt, having paid to the heirs and representatives of William Cocklin the whole sum of three hundred and seventy-five dollars, and the intermediate rent, they released to him the premises, and conveyed to him in fee simple all their right, title, and property in the same.

On the eighth day of November, 1823, John P. Van Ness, the

[John P. Van Ness vs. Alpheus Hyatt et al.]

appellant, obtained, before a magistrate of the county of Washington, a judgment for thirty dollars and twenty-five cents, against James Shields, and he caused a fieri facias to be issued on the judgment, on the 10th of June, 1824, under which a levy was made by the constable having the process, on the right, title, interest, estate, and claim of James Shields, in and to the lot originally held by him, under the lease and agreement with William Cocklin. The property levied upon was sold by the constable, under the process for the sum of fifty-four dollars, on the 10th of July, 1824; and John P. Van Ness, the appellant, became the purchaser thereof on the 19th day of August, 1825: the constable conveyed the premises sold by him, to the appellant, by a deed of indenture, which was recorded on the 9th of January, 1826.

The appellant having filed his bill stating all the facts, and alleging the conveyances made by Shields and Franks, and the heirs and representatives of William Cocklin to have been erroneous and fraudulent, and averring his full readiness to pay the heirs and representatives of William Cocklin, or to the representatives of Franks, all that Shields was bound to pay to them; prayed a decree that the property should be assigned to him, and that he should be quieted in the possession of the same; and for general relief.

There was no evidence to support the allegations of fraud stated in the bill, nor was there any proof given of notice to the appellees of the same. The answers, as far as they were responsive to the bill, and the several exhibits with the bill and the answers, were the only proofs in the cause.

The Circuit Court, after a hearing of the parties by their counsel, dismissed the bill with costs; and the complainant prosecuted this appeal.

The case was argued by Mr. Hoban and Coxe, for the appellant; and by Mr. Key for the appellees.

For the appellant, it was contended, that the Circuit Court erred in refusing the prayer contained in the bill.

That the sale of the constable conveyed the estate of Shields at the time to Van Ness.

That there is no proof of any other incumbrance on the property, than the purchase-money and rent, when Van Ness purchased.

Mr. Hoban considered the interest of Shields in the lot, at the time of the sale by the constable, as one liable to execution. The mortgagor in possession is the owner of the property, and his interest may be levied upon and sold. Cited, M'Call vs. Lenox, 9 Serg. and Rawle, 230. 2 Greenleaf's Rep. 132. 16 Mass. Rep. 305. 4 Johns. Rep. 41. 10 Johns. Rep. 481. 12 Johns. Rep. 521. 1 Barn. and Ald. 230. 3 Paige's Rep. 219. 9 Cranch's Rep. 153.

Coxe, also for the appellant, contended, that the interest of Shields in the land, was such as was the subject of an execution; and that

the deed from the constable to the appellant conveyed that interest. It was recorded within the time required by law, and was a valid and efficient deed. The mortgagor is the owner of the property mortgaged against all the world, the mortgagee excepted.

Mr. Key for the appellees:—

The appellant acquired no lien on the property of Shields by the judgment obtained before a magistrate. This is prohibited by the act of Congress of March, 1823. Birch's Digest, 311. Nor was any acquired by the levy made under the fieri facias issued under the judgment. This is the consequence of the provision of the act of Congress against a lien. There is no record of judgments before magistrates, and therefore no notice of them. The same may be said as to the sale by the constable; and until the deed of August, 1825, was recorded in January, 1826, nothing could be known of the proceedings by which a bona fide purchaser might protect himself.

Shields had no property which could be made the subject of a levy. In May previous to the proceeding he had mortgaged the lot to Franks, who subsequently, before the constable's sale, conveyed the mortgaged interest to Alpheus Hyatt. On the 9th of May, 1825, Shields released all his interest in the premises to Mr. Hyatt.

But Shields had no interest upon which a levy could be made under the lease from Cocklin; or if he had an interest under the lease, it expired on the 1st of January, 1826. The appellant applied in 1836 to the heirs of the lessor, to redeem in 1836, when all the interest under the lease was sure.

Shields had nothing but an equity of redemption on the property; and this in the District of Columbia, which is regulated by the law of Maryland prevailing when the territory was ceded to the United States, could not be levied upon. 8 East, 484. 2 Saunders, 11. Act of Maryland of 1810, ch. 130. 9 Cranch, 496. 2 Harris and M'Henry, 355. 5 Harris and Johns. 315.

Mr. Justice BARBOUR delivered the opinion of the Court:—

This is an appeal from the Circuit Court for the county of Washington, in a suit in equity brought by the appellant in that Court, in which a decree was made, dismissing the bill with costs.

The case was this. On the 31st day of December, 1818, an agreement was entered into between William Cocklin and James Shields; by which Cocklin leased to Shields part of a lot in the city of Washington, for ten years, from the 1st of January, 1819, for the yearly rent of thirty-five dollars. The lessee was to build a two story brick house on the lot, within twelve months from the date of the lease. And it was agreed between the parties, that if, at the expiration of the lease, Shields should pay to Cocklin three hundred and seventy-five dollars, then the rent should cease to be paid; or if all, or any part of the three hundred and seventy-five dollars were paid before the expiration of the lease, then such part

of the rent of thirty-five dollars should cease, as should bear an equal proportion to the money so paid.    And on the receipt of the whole of the purchase money, and not before ; Cocklin should make to Shields a good and sufficient title in fee simple, to the lot of ground described in the lease.

On the 23d of September, 1823, Shields, the lessee, mortgaged the premises to a certain John Franks, to secure a debt of $1127 18. On 7th May, 1825, Franks assigned all his right and title to the appellee ; who also, on the 9th of May, 1825, procured from Shields a release of his interest, and from the representatives of Cocklin a conveyance of all their title, on the 16th of April, 1826.

On the 8th of November, 1823, the appellant obtained, before a magistrate in Washington county, a judgment against Shields for $30 25, and a fieri facias issued thereon, on the 10th of June, 1824 ; which was levied by the constable, upon the right, title, estate, interest, and claim of Shields in the lot in question.    At the sale of the lot, under this execution, the appellant became the purchaser, at the price of $54 ; and the constable, by a deed dated the 19th of August, 1825, and recorded the 9th of January, 1826, conveyed the right and title of Shields in the lot, to the appellant.

The bill was brought by the appellant against the appellee, Shields, the representatives of Cocklin and of Franks, stating the above facts, which are all that are material to a correct understanding of the case ; charging that the mortgage to Franks was fraudulent and covinous, and that all the conveyances to the appellee were made with full knowledge by all parties of the appellant's purchase and rights ; averring his readiness to pay all that Shields was bound to pay for the property in question, at the time of his purchase, to Cocklin or his heirs, or to the representatives of Franks, then deceased ; and praying that all the parties might be compelled to assign their pretended rights and claims to the property in question, to the complainant, and deliver up quiet possession of the premises ; and for general relief.

The view which we have taken of the case renders it unnecessary to state the grounds of defence taken in the several answers.    It will be sufficient to say, that there is no proof in the cause, except the answers, as far as they are responsive to the bill, and the several exhibits with the bill and answers : that all the facts stated above are contained in the bill itself, and proven by the exhibits ; and that there is no evidence to sustain either fraud, or notice, as alleged in the bill.

Upon this state of the case the question arises, whether the appellant is entitled to the relief which he prays for.    The only interest which the appellant can claim in the property in question, is derived from the levy made by the officer under his execution, and the purchase made by him at the sale under that execution, of whatever right, title, and claim Shields had in the property.    Now it must be borne in mind, that not only before the sale, but even before the levy, Shields had mortgaged the lot to Franks ; and,

consequently, his right was only an equity of redemption. Was this such a right or interest, as that a fieri facias could be levied upon it? The principle of the common law undoubtedly is, that no property but that in which the debtor has a legal title is liable to be taken by this execution; and, accordingly, it is well settled in the English Courts, that an equitable interest is not liable to execution. 1 Vesey, Jr. 431. 8 East, 467. 5 Bos. and Pull. 461.

In the United States different views have been taken on this question, in the Courts of the several states. It is said, in 4 Kent's Commentaries, 153, 154, that Courts of law have, by a gradual and almost insensible progress, adopted the views of a Court of equity on the subject of mortgages, which are founded in justice, and accord with the true intent and inherent nature of the transaction; that except as against the mortgagee, the mortgagor, while in possession, and before foreclosure, is regarded as the real owner; and that, in this country, the rule has very extensively prevailed, that an equity of redemption was vendable as real property on an execution at law, and that it is also chargeable with the dower of the wife of the mortgagor: and cases are referred to, in New York, Connecticut, and other states, in support of the proposition. On the contrary, it has been held in Virginia, that the resulting interest of a grantor in a deed of trust made to secure debts, cannot be reached by execution. 6 Rand. 255. And this principle is not without some strong reasons in its support, independently of mere authority. Amongst others, Lord Ellenborough very cogently remarks, in 8 East, 481, that the sheriff could only sell subject to the trusts; that the execution creditor, or the vendee, would still be obliged to go into equity, to get an account, or to redeem prior encumbrances, which might be done in the first instance by a judgment creditor, with less expense and delay; besides, the destruction of the debtor's estate, which under so much doubt and difficulty would sell greatly under value, so that a large equitable interest might be exhausted in satisfaction of a small demand, to the detriment of other creditors.

Whatsoever may have been the decisions upon this subject, in the Courts of some of the states, in which the Courts of law have, "by a gradual and almost insensible progress, adopted the equitable views of the subject," we must be governed, in deciding this case, by that law which Congress enacted for the District of Columbia, on assuming jurisdiction over it. They adopted the laws of Maryland then in force, as far as regards that part of the District in which this question arises. Amongst those laws was the common law. Now we have already seen, that by the common law, an equitable interest, such as an equity of redemption, is not liable to execution. This would be decisive of the case, unless there should be found to be some legislation, or some course of authoritative judicial decision, which had so far modified the common law, by engrafting upon it the principles of the Court of equity, in relation to mortgages, as to change the rule in this respect. It is not pretended that any legislative act has produced this effect. Is there any course of

judicial decision which does? Three Maryland cases have been cited for this purpose. As to two of them, viz. Purl *vs.* Duvall, 5 Harr. and Johns. 69. 74, and Ford *vs.* Philpott, 5 Harr. and Johns. 312, it would be sufficient to say, that they had been decided many years since the cession by Maryland of that part of the District, in which this question arises, was made; and, therefore, whatever respect might be due to them, they are not authority. As to the case of Campbell *vs.* Morris, which was decided in the year 1797, we are informed that the Chief Justice of the Court had declared that the covenant for quiet enjoyment in that case was a legal estate, which was attachable; and that the Court gave no opinion whether an equity of redemption was liable to attachment.

But without examining these cases in detail, or undertaking to say that they would leave the question entirely free from doubt, we think that there is enough, both in the legislation and judicial decisions of Maryland, and in a decision of this Court, to show how the law is understood there.

As to legislation. By the act of Assembly of 1810, sheriffs, under a fieri facias, are authorized to seize and expose to sale any equitable estate or interest which the debtor may have in any lands, tenements, or hereditaments. Now, why was this act passed? If such had been considered the principle at common law, the act would have been mere supererogation. It is, therefore, in our opinion, decisive evidence to prove, that the contrary was considered to be the law before its passage, as it does not profess to be a declaratory act.

But let us for a moment examine the judicial decisions of Maryland, and one in this Court.

In 6 Gill and John. 72, it is decided that a mortgagor cannot maintain trespass against a mortgagee. On the contrary, in 11 John. 534, it is decided that a mortgagor may maintain trespass against the mortgagee. In 4 Kent's Com. 154, it is said, that an equity of redemption is chargeable with the dower of the wife of the mortgagor. On the contrary, this Court, in the case of Stelle *vs.* Carroll, at the last term, 12 Peters, 201, professing to follow the law of Maryland, in other words, the common law, decided, that the widow of a mortgagor was not dowable of an equity of redemption. Now, why these contrary decisions upon these two important points, in relation to the nature and character of the interest and title of a mortgagor? There can be but one answer. That in New York and other states, following a similar course, the Courts of law had, by a gradual progress, adopted the views of a Court of equity in relation to mortgages; and considered the mortgagor, except as against the mortgagee, whilst in possession, and before foreclosure, as the real owner, and even as against the mortgagee having the right of possession; whilst in Maryland, as we learn from the case before referred to, in 6 Gill and Johnson, the legal estate is considered as being vested in the mortgagee; and that as soon as the estate in mortgage is created, the mortgagee may enter into possession, though he seldom avails himself of that right. In these antagonist

doctrines, we have the clew to the opposing decisions of the Courts. Neither dower can be recovered, nor trespass maintained, where there is a mere equity; nor, where that is the case, can a fieri facias be levied. The same principle, then, precisely, which, in Maryland precludes the recovery of dower by the widow of a mortgagor, or the maintenance of an action of trespass by a mortgagor against a mortgagee, exempts, also, the equity of redemption of a mortgagor from being liable to execution.

But there is a case decided at the last December term of the Court of Appeals of Maryland, which, we think, puts an end to all question in this case. From a manuscript record of that case, which has been laid before us, we extract the following language: " The last point raised by the appellants is, that the property taken under the execution was not legally the property of Brady, and that equitable interests in personal property are not the subjects of an execution. With the appellant's premises on this point, as legal propositions, we see no reason to find fault. It cannot be denied as a legal principle, that a debtor's equitable estate in personal property cannot, at law, be seized and sold under a fieri facias." Now, this was the case of personal estate; but it proves, clearly, that, but for the act of 1810, before referred to, the same principle would have applied to real estate; for the difficulty does not grow out of the kind of property, but out of the kind of interest in the property, to wit, that it is equitable, and not legal.

Upon these grounds, we think that Shield's interest in the lot was not subject to execution, on account of its being an equity of redemption.

There is one ground stated in the manuscript opinion of the Court of Appeals of Maryland, before referred to, in relation to this subject, which it may be proper to notice.

It is there said, that, as in case of equitable interests, a Court of equity would, after an execution issued, and a return showing that there was no available remedy at law, assist the party, by charging the equitable interest; so the Court, if applied to for that purpose, would decree a ratification of a sale of such interest, where it had been made by the officer under the execution. Whatever might be the authority of a Court of equity on this subject as against Shields himself, it could not be done in this case; because here there are third parties, who have, for a valuable consideration, without notice, acquired a previous equitable right, and gotten in, also, the legal estate. So that they stand upon the great principle that they have the prior equity, and that equity fortified by the legal title.

But there is another view of this case, which we will present very briefly, which also brings us to the conclusion that Shields' interest in the lot in question would not have been liable to execution, even if it had not been encumbered by a previous mortgage. And it is this: beyond the mere lease for years, Shields had no interest whatsoever in the lot, but the right to purchase, in case he, by a given time, complied with the particular conditions. Now,

this right to purchase, we consider nothing more than a contract by which the party was entitled, if he had elected to have done so, upon certain terms, to secure to himself certain benefits. In other words, at the time of the levy of the appellant's executions, Shields had a conditional right to purchase, which, in effect, was nothing more than a chose in action. We do not think it necessary to refer to authorities to sustain a proposition so well settled, as that an execution of fieri facias cannot be levied on a chose in action.

But even if this could be done, no one could derive a greater benefit under that contract than the party himself; and Shields could not have claimed the benefit of the election given to him to purchase, because it depended, in its very terms, on particular conditions to be performed by him, at a particular time; which were not performed. Upon these grounds, we think that Shields had not such an interest in the lot in question as was liable to execution; that, consequently, the appellant acquired no right by his purchase, which gives him a stand in a Court of equity to ask for the right of redemption, or any other relief. The decree of the Circuit Court is therefore right, and is affirmed, with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is adjudged and decreed by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs.