## PAGE v. EDMUNDS.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 100. Argued November 13, 1902.—Decided January 5, 1903.

1. A seat or membership in the Philadelphia Stock Exchange belonging to a person adjudicated a bankrupt is property which the bankrupt could have transferred within the meaning of subdivision 5 of section 70 of the bankruptcy act of 1898, and it therefore passes to the trustee in bankruptcy of the owner.
2. There is nothing in the bankruptcy act or the statutes of Pennsylvania, as the latter have been construed by the highest courts of that State, exempting such seat from sale by the trustee in bankruptcy.

THE appellant is a resident of Philadelphia, Pa., and has been a member of the Philadelphia Stock Exchange in good standing since the year 1880. On the 16th of November, 1899, he was adjudged a voluntary bankrupt in the District Court for the Eastern District of Pennsylvania, and the cause was referred to Alfred Driver, Esq., referee in bankruptcy. In the schedules attached to his petition the appellant did not include as an asset of his estate his membership in the stock exchange. His trustee in bankruptcy caused the membership to be appraised, and petitioned the referee for an order to sell the same. The petition was heard before the referee, who, after hearing, filed his report containing a summary as follows:

"The said Page was adjudicated a bankrupt upon his own petition on November 16, 1899. Upon his examination he stated that he is a member of the Philadelphia Stock Exchange; that he bought his seat in 1880, paying for it at that time about $5500; that when a member wishes to dispose of

his seat he hunts up somebody who wants to buy and sells it to him; that seats are always salable; that the last price paid of which he heard was $8500; that he could sell his seat at any time to any one who wanted to buy it; that the buyer takes it with the understanding that he will be elected a member; otherwise it is no sale; that he could sell his seat without the approval and concurrence of the other members; that he did not include the seat as an asset in his schedules because from his understanding of the matter he did not consider it an asset; that in the event of his death there would be paid to his wife $5000 out of the gratuity fund, and that she would get said sum and the seat; that if he should sell the seat the gratuity or insurance would go with the seat.

"The trustee upon this evidence of the bankrupt caused the seat in the stock exchange to be appraised, and the apraisers have reported its value to be $8000.

"The secretary of the stock exchange testified that the bankrupt had no unsettled contracts with or claims against him by any member of the exchange. The Philadelphia Stock Exchange is an unincorporated association. The constitution and by-laws were offered in evidence. The articles of the constitution which relate to membership and the transfer of membership are as follows:

"Article 5.

"Sec. 4. A committee on admissions, consisting of five members, to which all applications for membership, transfer of membership and readmissions of suspended members, shall be referred. It shall be its duty to inquire into the general standing of the applicant, and make a report thereon to the governing committee within one month of the presentation of the application. Until the committee makes a report favorable to the admission of the applicant, he shall not be voted for as a member, unless upon the written application of seven (7) members of the governing committee to the president, made within five (5) days after the committee's report has been presented; in which case the governing committee may, by a two thirds vote, reverse the report of the committee, and such reversal

shall have the same effect as if the committee's report had originally been favorable. If a report be favorable, the name of the candidate shall be posted in the stock exchange, and notice given that a ballot will be taken at the next stated meeting of the governing committee in order that every member of the exchange may have an opportunity of objecting to the candidate's election; such objection shall be in writing to the president of the governing committee.

" The election of candidates for membership shall be held by the governing committee, but no election shall be valid unless at least eighteen (18) ballots be cast; and, if five (5) ballots be cast against a candidate, he shall be declared not elected.

" Article 11.

" SEC. 1. The number of members shall be limited to two hundred and thirty (230).

" SEC. 4. Any member wishing to sell his membership shall have the right to do so, provided he has no unsettled contracts with or claim against him by any member of the stock exchange, for transactions arising in or relating to the business of banker or a stock or exchange broker; but, where the arbitration committee shall determine that any claims or contracts exist, the governing committee may, except in cases of insolvency, refuse to permit the membership to be sold, until such claims or contracts are, in its opinion, satisfactorily settled.

" The proceeds of the membership, if sold, shall, after deducting all charges due to the exchange, to be determined, in cases of controversy, by the arbitration committee—belong to its owner's creditors in the exchange, in proportion to the amount of their respective claims, determined by the arbitration committee, as hereinbefore provided in section 5, article V, and be paid accordingly; and the remainder, if any, shall be paid to the owner.

" SEC. 5. When a member dies, his membership shall, within one year thereafter, be sold or transferred; if, however, he be indebted to any member of the stock exchange, then, on the written request of two thirds of the creditors in interest, said membership shall be sold, at the discretion of the committee

on admissions, and the proceeds thereof, after deducting all charges due to the exchange, to be determined in case of controversy by the arbitration committee, shall be paid to its owner's creditors who are members of the exchange, in proportion to the amount of their respective claims, determined as hereinbefore provided in section 5, article V, as to disputes between living members; and the remainder, if any, shall be paid to the legal representative of the deceased.

"The membership of a deceased member shall be liable for all dues and assessments which may be made by the exchange from the day of his death until such time his membership is transferred.

"SEC. 8. Membership in the exchange shall, *ipso facto*, terminate in either of the following cases:

"1. Fraud in any transaction arising out of the member's business as a banker or broker.

"2. Conviction, by a jury, of any infamous offence or felony. And the commission of the offence shall be ascertained in each case, after notice and opportunity for hearing by a vote of two thirds present (being a majority of the whole number) of the governing committee.

"3. Suspension from the stock exchange for any cause, and inability for one year thereafter to comply with the constitution, by-laws and rules as to eligibility for reinstatement.

"SEC. 9. Upon such termination of membership, the said membership shall be sold, at the discretion of the governing committee, and the proceeds, after deducting all charges due the exchange and all debts due to creditors in the exchange—which amounts shall be determined by the arbitration committee—shall be paid to the expelled member, his heirs or assigns.

## "Article 12.

"SEC. 6. Any member who shall be declared a bankrupt shall, *ipso facto*, be suspended from the stock exchange; but a suspended member, presenting a certificate of discharge under the United States bankrupt law, becomes eligible under the rules for reinstating suspended members.

" Sec. 7. If any suspended member fails to settle with all his creditors within six months from the time of his suspension, his membership may be .disposed of by the committee on admissions, and must be sold at the end of twelve months; and the proceeds, after deducting all charges due to the exchange, to be determined, in cases of controversy, by the arbitration committee—shall belong and be paid to his creditors in the exchange in accordance with section 3.

" Sec. 11. The proceeds arising from the sale of the membership of an insolvent shall be divided *pro rata* by the arbitration committee among the creditors recorded, as in section 3, and if any balance remain it shall be paid over to the insolvent.

" The by-laws contain no provision relating to membership or transfer of membership."

As a conclusion from these facts and from the bankrupt law, the referee on March 7, 1900, " ordered that the trustee sell at public auction the seat or membership of Edward D. Page, the bankrupt, and all his right and interest therein, subject to the constitution and by-laws of the Philadelphia Stock Exchange regulating membership therein."

The appellant petitioned for a review of the referee's order by the District Court, averring error in the order in that the petitioner was advised and believed that his membership in the Philadelphia Stock Exchange was not property within the meaning of the bankrupt act of July 1, 1898, nor was it an asset of his estate which could be sold by his trustee in bankruptcy.

On June 19, 1900, the District Court approved the order of sale made by the referee and directed it to be executed. The matter was then taken for review to the Circuit Court of Appeals, which court confirmed the order of the District Court. This appeal was thereupon taken.

*Mr. George W. Jacobs* for appellant.

*Mr. Henry La Barre Jayne* and *Mr. Henry R. Edmunds* for appellee.

MR. JUSTICE MCKENNA, after making the foregoing statement, delivered the opinion of the court.

The case presented by the record is a simple one and does not call for elaborate discussion. Indeed, it has been virtually ruled by this court. *Hyde* v. *Woods*, 94 U. S. 523, 525; *Sparhawk* v. *Yerkes*, 142 U. S. 1.

Section 70 of the bankrupt act of 1898 provides that the trustee shall be vested with.:

"The title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is property which is exempt, to all  .  .  .

"(3.) Powers which he might have exercised for his own benefit,  .  .  .

"(5.) Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process."

This section, and that which provides for exemptions of property, constitute the elements to be considered.

Section 6 of the bankrupt act provides as follows:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

1. Was the seat in the stock exchange property which could have been by any means transferred *or* which might have been levied upon and sold under judicial process? If the seat was subject to either manner of disposition, it passed to the trustee of the appellant's estate.

We think it could have been transferred within the meaning of the statute. The appellant could have sold his membership, the purchaser taking it subject to election by the exchange, and some other conditions. It had decided value. The appellant paid for it in 1880, $5500, and he testified that the last price he had heard paid for a seat was $8500. One or the other of these sums, or, at any rate, some sum, was the value of the seat. It was property and substantial property to the extent of some

amount, notwithstanding the contingencies to which it was subject. In other words, the buyer took the risk of the contingencies. And they seem to be capable of estimation. The appellant once estimated them and paid $5500 for the seat in controversy; another buyer estimated them and paid $8500 for a seat. A thing having such vendible value must be regarded as property, and as it could have been transferred by some means by appellant (one of the conditions expressed in section 70) it passed to and vested in his trustee. Whether it was subject to levy and sale by judicial process we need not consider except incidentally in discussing the next contention.

2. To sustain the claim of exemption under the state law, and therefore under the bankrupt act, appellant relies upon the decisions of the Supreme Court of the State of Pennsylvania. If those decisions are interpretations of the state statute, we must yield to their authority. If they are declarations of general law —mere definitions of property—we may dispute their conclusions if their reasoning does not persuade.

Two cases are cited by appellant: *Thompson* v. *Adams*, 93 Penn. St. 55, and *Pancoast* v. *Gowen*, 93 Penn. St. 66.

In *Thompson* v. *Adams* the following facts were presented (we quote from appellant's brief):

" Thompson furnished to Richards the money with which to purchase a membership seat in the Philadelphia Stock Exchange. Richards subsequently died indebted to sundry members of the exchange and his seat was sold by it under its rules, to satisfy these claims, which were in excess of and exhausted the proceeds realized. Thompson sued Adams *et al.*, trading as the Philadelphia Stock Exchange, to recover the proceeds of the seat in the treasurer's hands, claiming to be the equitable owner of the seat, as against the creditors of Richards in the exchange."

.   The entire opinion of the court was as follows :

" The constitution and articles of a voluntary association, such as the Philadelphia board of brokers, are law as to the members. The plaintiff below was not a member, but had furnished the money by which Richards obtained a seat. His contention is that he was the equitable owner of the seat, and

had title to what was received for it, and that the defendant had no right to apply the proceeds to debts due by Richards to other members, in pursuance of the terms of the constitution of the club. But why not? Richards was the member of the board, the legal owner of the seat, and the plaintiff an entire stranger, unknown to the association. The members give credit to each other in part, no doubt, upon the faith of the liability of a member's seat to them for his debts. There is nothing unlawful or unreasonable in this regulation. The seat is not property in the eye of the law, it could not be seized in execution for the debts of the members. It is the mere creation of the board, and, of course, was to be held and enjoyed with all the limitations and restrictions which the constitution of the board chose to put upon it."

It is manifest that the court did not rest its decision upon the exemption of the property under a statute of the State. It asserted simply the rights of the members of the club, under its constitution, to be preferred in the payments of their claims. It is true, the court said, " the seat is not property, in the eye of the law; it could not be seized in execution for debts of its members." This language is not very clear. It is not certain whether the learned court intended to say that the seat was not property at all, or not property because it could not be seized in execution for debts. If the former, we cannot concur. The facts of this case demonstrate the contrary. If the latter, it does not affect the pending controversy. The power of the appellant to transfer it was sufficient to vest it in his trustee.

" The case of *Pancoast* v. *Gowen*," (we quote again from appellant's brief,) involved " an attachment against the Philadelphia Stock Exchange, sought by a creditor of a member in good standing, to compel the sale of his seat in satisfaction of a judgment debt, which was refused on appeal to the Supreme Court, after an exhaustive examination by the court of the exchange rules." The opinion was as follows :

" A seat in the board of brokers is not property subject to execution in any form. It is a mere personal privilege, perhaps more accurately, a license to buy and sell at the meetings of the board. It certainly could not be levied on and sold under

a *fi. fa.* The sheriff's vendee would acquire no title which he could enforce, nor is it within either the words or the spirit of the act of June 16, 1836, sec. 35, Pamph. L. 767, providing for attachment on judgment. Whether the proceeds of the sale of the seat in the hands of the treasurer of the board, and payable to the defendant, according to the regulations and by-laws of the board, could be thus reached is an entirely different question. This, and no more, is what we understand to have been decided by the Supreme Court of the United States, in *Hyde* v. *Woods*, 4 Otto, 525, where Mr. Justice Miller says, ' If there had been left in the hands of the defendants any balance after paying the debts due to the members of the board, that balance might have been recovered by the assignee, in bankruptcy."

There is an absence in the latter case, as there was in the other, of any purpose to construe a statute, and the test of property is the same as in the other case—liability to be levied upon and sold under a *fi. fa.* An attempt to enforce such a levy and sale was made in both actions to the exclusion of the rights of other members of the association. The attempt was properly defeated. Undoubtedly the seat in the board " was to be held and enjoyed with all the limitations and restrictions which the constitution of the board chooses to put upon it."

We expressed that limitation in *Hyde* v. *Woods*, 94 U. S. 525, but we decided nevertheless that a seat was property, and that if upon its sale any balance was left after paying the debts due to the members of the board, that balance could be recovered by the assignee in bankruptcy. This was not denied by the Supreme Court of Pennsylvania, and it may be that the court only intended to declare the priority of board creditors over general creditors. If so, the decision expresses no rule with which we need take issue or which is relevant to the pending controversy. Nor indeed if the case may be construed more broadly. The bankrupt act of 1898 has made its own rule. For the same reason it is not necessary to review the cases cited from other jurisdictions. Whatever is in them favorable to appellant's contention was based upon the inability that the respective courts found in the law to transfer a title which could be insisted upon and enjoyed against the consent of the

association. But that consequence, in our judgment, affects the value of a seat in a stock board, not its existence as property. The contingencies which may defeat or affect its title, or its enjoyment will be reflected in its price, and if, notwithstanding them, a seat has a vendible value of from $5000 to $8000, it would seem that the law should have some process to reach it for the benefit of creditors. And the bankrupt act supplies the process. The trustee of a bankrupt's estate is the bankrupt's assignee, and we only repeat the statute when we say that the trustee is vested with whatever the bankrupt can convey. And the statute is something more than another mode of transferring property *in invitum*. It is a gift of privileges and expresses the conditions upon which they are conferred.

To establish the exemption of the seat under the state law counsel quotes the provisions of the local insolvent law of June 16, 1836, P. L. 729, as follows :

" That every insolvent shall be entitled to retain all such articles as may by law be exempted from levy and sale, upon execution." (Sec. 35, par. 5.)

" Every such debtor shall be entitled, notwithstanding his assignment, in conformity with this act, to retain for the use of himself and his family all such articles as are or may be by law exempted from levy or sale on any execution, or from distress for rent, and the property in such articles, shall not pass to his trustees." (Sec. 38.)

It is argued that the Supreme Court of the State, having decided that a seat in the stock board is not subject to levy and sale under execution, it becomes under those provisions property exempt from debts under the state law, and exempt therefore under section 6 of the national bankrupt act.

But there is nothing in the opinion of the court which intimates an intention to construe the statute of 1836 or that the decision would give to the statute the effect asserted. If such had been the intention no question would have been reserved or mentioned of the right of general creditors to resort to the proceeds of the sale of a seat after board creditors should be paid. Not only the seat but the proceeds of its sale would be exempt.

Another answer is urged to the contention. By the act ·of April 9, 1849, P. L. 533, sec. 1, it is enacted : " In lieu of the property now exempt by law ·from levy and sale on execution, issued upon any judgment obtained upon contract and distress for rent, property to the value of three hundred dollars, exclusive of all wearing apparel of the defendant·and his family, and all bibles and school books in use in the family, (which shall remain exempted as heretofore,) *and no more*, owned by or in possession of any debtor, shall be exempt from levy and sale on execution or by distress for rent."

*Judgment affirmed.*