**ROWE v. COLPOYS, U. S. Marshal, et al.**

No. 8256.

United States Court of Appeals for the District of Columbia.

Decided June 28, 1943.

Mr. Rossa F. Downing, of Washington, D. C., for appellant.

Mr. Simon Hirshman, of Washington, D. C., for appellees, Franc Jewelry Company and National Surety Corporation.

Messrs. Edward M. Curran, United States Attorney, and John L. Laskey and Charles B. Murray, Assistant United States Attorneys, all of Washington, D. C., filed a brief for appellee Colpoys, United States Marshal.

Before MILLER and EDGERTON, Associate Justices, and EICHER, Chief Justice of the District Court of the United States for the District of Columbia.

MILLER, Associate Justice.

This case presents, for the first time in this jurisdiction, the question whether or not a license to sell alcoholic beverages, issued by the Alcoholic Beverage Control Board, was subject to levy, under execution, to satisfy a judgment of the Municipal Court of the District of Columbia.[1] The trial court assumed that it was not, but directed a verdict against appellant upon the question of damages, alleged to have been sustained on account of an improper levy. The assumption that such a license is not subject to levy depends, apparently, upon the following language in Richards v. Geiger:[2] "That a license to sell intoxicating liquors is personal to the holder, a mere permit, and not transferable *unless the right is expressly conferred by statute,* is plain, the decisions upon the question being uniform and conclusive. 'There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils.' Crowley v. Christensen, 137 U. S. 86, 34 L.Ed. 620, 11 S.Ct. 13. A review of the several sections of said act of 1893 leaves no room for doubt that, instead of authorizing the transfer of a license as a matter of right, the act expressly negatives such a proposition." [Italics supplied] But neither the Richards case, nor Crowley v. Christensen to which it refers, gave the slightest consideration to the question of the present case.

One section of the District of Columbia Code provides that: "The writ of fieri

---

[1] It was stipulated on oral argument that the judgment of the Municipal Court was valid and that appellant was liable for its satisfaction.

[2] 39 App.D.C. 278, 284.

facias may be levied on all goods and chattels of the debtor not exempt as aforesaid, * * *." [3] Another section of the Code provides: "In other cases of equitable interest of the judgment debtor in personal chattels execution may also be levied thereon and the lien thus obtained may be enforced by proceedings in equity."[4] A third section provides: "The said court may, for the purpose of executing a decree, * * * issue a fieri facias and attachment by way of execution against his lands, tenements, chattels, and credits, *or other incorporeal* property, to satisfy the decree * * *."[5] The Code section which provides for executions issued on judgments of the Municipal Court does not specify the subjects of levy except negatively, by providing that such an execution "* * * shall not be a lien on the *personal property* of the judgment defendant except from the time when it is actually levied, and then it shall have priority over any execution issued out of said District Court * * * after said levy." [Italics supplied] The same section does limit executions upon Municipal Court judgments as follows: "It shall not be levied on real estate." [6]

■ The term, goods and chattels, was used to describe property subject to levy under a writ of fieri facias at common law.[7] As generally used today it is a term of broad and inclusive meaning.[8] At common law it had a more limited meaning, when applied to levies in satisfaction of judgments, because equitable and incorporeal interests were required to be reached by proceedings in equity.[9] This distinction has become largely vestigial in character, especially since adoption of the new rules of federal civil procedure.[10] But even before the adoption of those rules, the integration of equitable and legal process for the satisfaction of judgments had been accomplished, for the District of Columbia, through the action of Congress in enacting the statutes which have become those sections of its Code, to which reference has been made.[11] Obviously, there is no long-

---

[3] D.C.Code (1940) § 15—210.

[4] D.C.Code (1940) § 15—212.

[5] D.C.Code (1940) § 11—326.

[6] D.C.Code (1940) § 15—209.

[7] 3 Bl.Comm. 417.

[8] See, for example, Black's Law Dictionary (3d ed.) 851: "This phrase is a general denomination of personal property, as distinguished from real property; the term 'chattels' having the effect of extending its scope to any objects of that nature which would not properly be included by the term 'goods' alone, e. g., living animals, emblements, and fruits, and terms under leases for years. Larson v. Judd, 200 Ill.App. 420. The general phrase also embraces choses in action, as well as personalty in possession. In wills. The term 'goods and chattels' will, unless restrained by the context, pass all the personal estate, including leases for years, cattle, corn, debts, and the like. Ward, Leg. 208, 211."

[9] Ager v. Murray, 105 U.S. 126, 129, 26 L.Ed. 942; Van Ness v. Hyatt, 38 U. S. 294, 13 Pet. 294, 10 L.Ed. 168; Mayse v. Gaddis, 2 App.D.C. 20, 26.

[10] Address of Chief Justice Hughes, 12 Proceedings Am. Law Institute 54, 57, 58: "It is manifest that the goal we seek is a simplified practice which will strip procedure of unnecessary forms, technicalities and distinctions, and permit the advance of causes to the decision of their merits with a minimum of procedural encumbrances. It is also apparent that in seeking that end we should not be fettered by being compelled to maintain the historic separation of the procedural systems of law and equity. That separation has long been abolished in most of the states, either by the adoption of one form of civil action or by other practical measures of administration. Those who have practiced under such a unified system would not, I think, entertain for a moment the suggestion that they should go back to the old separate methods. It is true that in certain jurisdictions, and in one with which I happen to be especially familiar, the simple form of unified procedure originally adopted came to be overlaid with procedural monstrosities due to legislative tinkering and elaboration. Such experiences have taught a lesson, and in the improvement we contemplate in the federal system we shall have the advantage of the simplicity and flexibility made possible by the exercise on the part of the Court of its rule-making power. May I recall to you the words of Chief Justice Taft: 'A perfectly possible and important improvement in the practice in the federal courts ought to have been made long ago. It is the abolition of two separate courts, one of equity and one of law, in the consideration of civil actions. * * * Many states years ago abolished the distinction and properly brought all litigation in their courts into one form of civil action. * * *'"

[11] D.C.Code (1940) §§ 11—326, 15—209, 15—210, 15—212.

er any substantial reason for preserving disparate categories of property, or of rights or interests in property, out of which to satisfy judgments which chance to be recovered in law or in equity proceedings. The modern trend of legislation is in this direction, and judicial interpretation, unhampered by contrary precedent in the District of Columbia, should go in the same direction.

■ But, even apart from this, and judged by the standard of the common law, the license involved in the present case should be subject to levy. The rule that intangible or incorporeal interests should not be subjected to the process of fieri facias, was applied in the case of such licenses as those of lawyers or physicians to practice their professions, and in the case of corporate franchises issued by legislative enactment. Considerations of public policy and of public convenience, perhaps, argue in favor of such a limitation. In the first case, issuance of the license is based upon qualities of personal probity and professional skill which require the most careful, individual scrutiny, and forbid transfer under any circumstances. In the second case, the state, as a matter of its own convenience and sovereignty, may properly limit the nature and extent of its grant; especially in forbidding transfer of such a franchise under process against it.[12]

No such considerations are present here. Express provision, for transfer and assignment of such a license as is involved in the present case, was made in the statute which provides for its issuance in the first place.[13] In the Richards v. Geiger case, the fact was that an effort had been made to satisfy the requirement of the statute in this respect. It was not because, as a matter of public policy, the license was non-transferable, but because—following an unsuccessful attempt to make a proper transfer, the probate court, nevertheless, authorized the continuance of a retail liquor business—it became necessary for this Court to explain the limited nature of the property right in such a license, and the exclusive authority of the Board to control the business of retailing liquor.[14] But, whether it is a right, the transfer of which is controllable by a court or by some other authority, it is, nevertheless, a valuable right, with attributes of property and transferable value, in the market of alcoholic beverage distribution.[15] No good reason, either of procedure or policy, has been urged, and none is apparent, for exempting this form of property right, and its tangible evidence, from the same process as that to which other property rights are subject.

■ We conclude, therefore, that the rule of the common law which forbids a levy upon licenses, was confined, and should be confined to non-transferable licenses;[16] that the reason for the rule fails in the case of a license which, by express statutory provision, is made subject to transfer; that, under the law of the District of Columbia, the license involved in the present case was subject to levy.

It is not necessary to consider the other questions presented on this appeal.

Affirmed.

---

[12] 2 Freeman, Executions (3d ed.) § 179, p. 908; Cf. Leonard v. Baylen Street Wharf Co., 59 Fla. 547, 52 So. 718, 719, 31 L.R.A.,N.S., 636. Where the grant of the franchise was to Leonard, his heirs, executors, administrators and assigns, it was held that its sale to satisfy a judgment was not forbidden, "where the use continued for the public good as originally designed by the grant."

[13] D.C.Code (1940) § 25—106: "The right, power, and jurisdiction to issue, *transfer*, revoke and suspend all licenses under this chapter shall be vested solely in the board * * *." [Italics supplied] D. C.Code (1940) § 25—107: "The Commissioners shall have specific authority to make rules and regulations for the issuance, *transfer*, and revocation of licenses * * *." [Italics supplied]

[14] Richards v. Geiger, 39 App.D.C. 278,

285: "When, therefore, *the attempt of the representatives of Mrs. Geiger to effect a transfer of her license within the time permitted by the rules of the excise board failed, the sale of liquor* thereafter by the executors was entirely without authority of law. The statute clothed the excise board with exclusive jurisdiction over the granting of licenses, and the court was without jurisdiction to issue the order authorizing and directing the appellees to continue to maintain a barroom, the license under which such business had theretofore been operated having expired." [Italics supplied]

[15] Fisher v. Cushman, 1 Cir., 103 F. 860, 865, 51 L.R.A. 292.

[16] Deggender v. Seattle Brewing & Malting Co., 41 Wash. 385, 83 P. 898, 4 L.R.A., N.S., 626.