**In re RAINBO EXPRESS, Inc.**

**RICHARDSON v. NATIONAL ACCEPTANCE CO. OF CHICAGO.**

**No. 9717.**

United States Court of Appeals Seventh Circuit.

Jan. 5, 1950.

Rehearing Denied Feb. 10, 1950. ·

Archie Schimberg, Chicago, Ill. (Harold J. Finder, Chicago, Ill., of counsel), for appellee.

Robert L. Oare, Paul R. Moo, South Bend, Ind., for appellant.

David Axelrod, Chicago, Ill., amicus curiae.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal by a trustee in bankruptcy from an order entered on August 2, 1948, affirming an order entered by the Referee on May 8, 1948, sustaining a lien asserted to have been acquired by appellee (hereinafter referred to as petitioner) under a chattel mortgage given by the bankrupt on November 18, 1946, pledging as security for a loan, in addition to certain chattels, the bankrupt's Certificate of Public Convenience and Necessity, issued by the Interstate Commerce Commission on October 28, 1944. Rainbo Express, Inc., engaged in the business of interstate motor transportation, was on October 24, 1947, adjudicated a bankrupt. On January 9, 1948, James B. Richardson, the appellant herein, was elected and qualified as Trustee.

On November 18, 1946, the bankrupt delivered to petitioner its promissory note for money borrowed and, at the same time, executed a chattel mortgage upon certain

personal property therein described. On July 2, 1947, petitioner filed in the bankruptcy proceeding a petition for leave to foreclose its chattel mortgage and at that time and by the terms thereof elected to declare the entire indebtedness to be immediately due and payable, and fully matured as of that date. The Referee concluded and so decreed that petitioner had a valid and subsisting lien upon all of the personal property described in its chattel mortgage, including Certificate of Public Convenience and Necessity No. MC 55887, issued to the bankrupt by the Interstate Commerce Commission on October 28, 1944. Petitioner's prayer for an order directing the Trustee to surrender the possession of the mortgaged chattels to petitioner was denied, and it was ordered that the Trustee proceed to administer the same, subject to petitioner's rights and the further order of the court.

On May 18, 1948, two creditors of the bankrupt filed a petition to review the Referee's order of May 8. No review was sought by the Trustee, and petitioner moved to strike the petition for review filed by the creditors. This motion, as shown in the order appealed from, was denied. Thereupon, the Trustee appealed from the court's order affirming the Referee's order.

On March 17, 1949, an opinion was rendered by this court reversing the order appealed from. A petition for rehearing was allowed, additional briefs, and further argument both written and oral have been presented.

The first question raised by petitioner is that the Trustee by his failure to petition for a review of the Referee's order waived his right to appeal from the court's order affirming the Referee's order. We find no occasion to discuss the point, as we think it is without merit. Levin v. Barker, 8 Cir., 122 F.2d 969; Johnson v. Barney, 8 Cir., 53 F.2d 770. (See cases therein cited.)

As already noted, the court below in affirming the Referee's order decided that petitioner had a valid and subsisting lien upon all the chattels described in the chattel mortgage executed in its favor by the

bankrupt on November 18, 1946. On this appeal the attack upon that decision is limited to the portion which decreed that petitioner had a valid lien as against the Trustee in Bankruptcy on the "operating rights" under the Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission.

In the beginning, it appears material to note the pertinent provisions of the chattel mortgage. It pledged as security "the operating rights and authorities granted by the Interstate Commerce Commission October 28, 1944, as Certificate of Public Convenience and Necessity No. MC 55887." The mortgage contained the usual provision permitting the mortgagor to retain possession of the chattels described therein until default be made in payment of the indebtedness provided for, and also provided for default if the mortgagor "file a petition in bankruptcy," and that upon default "the said Mortgagee * * * may sell and dispose of the said 'Mortgaged rights and properties.'" In case of default and for the purpose of effecting such sale by the mortgagee, the mortgagor appointed N. H. Paset as its attorney for the purpose of performing all acts necessary to accomplish the transfer of such "operating rights," and to sign such application forms as the Interstate Commerce Commission might require in order to effect such a transfer.

On November 18, 1946, the same date as the execution of the chattel mortgage but apparently as a separate instrument, the mortgagor as further security executed and delivered to petitioner a written agreement under which there was deposited and executed a blank application form of the Interstate Commerce Commission, to be used by petitioner in making application to the Commission for authority to sell, assign or transfer the "operating rights" described in the chattel mortgage. The chattel mortgage was duly and appropriately recorded three days after its execution, but the agreement given as further security was not made a matter of record.

The question for decision is whether petitioner by its chattel mortgage obtained

a lien upon the "operating rights" granted to the bankrupt by the Interstate Commerce Commission October 28, 1944, effective against the Trustee in Bankruptcy.

Sec. 212(b) of the Interstate Commerce Act, Title 49 U.S.C.A. § 312(b), provides: "Any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe." Under this statutory authority, the Commission promulgated Rule 1(d) as follows: "No attempted transfer of any operating right shall be effective except upon full compliance with these rules and regulations and until after the Interstate Commerce Commission has approved such transfer as herein provided. A transfer of operating rights by means of a pledge of such rights, or by the foreclosure of a pledge upon or lien against such rights, or by levy of execution in the satisfaction of any judgment or claim against the holder thereof, shall not be effective without compliance with these rules and regulations and the prior approval of the Commission."

The Trustee's position is predicated in the main upon the premise that a certificate issued by the Commission is not personal property which can be effectively mortgaged since it is a mere license or permit, personal in nature and transferable only pursuant to such rules and regulations as the Commission may prescribe, or, to state it another way, that prior to approval by the Commission there is no proprietary interest in the certificate holder to which a lien may attach. On the other hand, petitioner contends that the statute recognizes the right to transfer and that such right is not dependent upon prior approval by the Commission. In any event, it is contended that there is nothing in the Commission's rule or otherwise which precludes the creation of a lien by way of a chattel mortgage.

There are cases which lend support to both sides of the controversy, although we think, contrary to our previous view, that the petitioner's contention is supported by the weight of authority. No good purpose could be served in attempting a detailed discussion or analysis of the numerous cases. Cases relied upon by the Trustee which hold in one form or another that certificates to operate motor carriers are mere licenses or permits, personal in nature, and that no proprietary right exists which is transferable, and that an attempt to do so passes no title, legal or equitable, to the purchaser, are In re Application Ft. Crook-Bellevue Boulevard Line, 135 Neb. 558, 283 N.W. 223; Matz v. J. L. Curtis Cartage Company, 132 Ohio St. 271, 7 N.E. 2d 220, 224; Graziani v. Elder & Walters Equipment Co., Inc., 209 La. 939, 25 So.2d 904; Royal Blue Coaches, Inc., v. Delaware River Coach Lines, Inc., 140 N.J.Eq. 19, 52 A.2d 673; Hart, Trustee v. Seacoast Credit Corp., 115 N.J.Eq. 28, 169 A. 648, affirmed 116 N.J.Eq. 573, 174 A. 525.

The Hart case, supra, no doubt is the strongest authority in support of the Trustee's position. There the controversy concerned the validity of a chattel mortgage given by a certificate holder of bus operating rights. There, as here, the question arose between the mortgagor's trustee in bankruptcy and the mortgagee. Under the New Jersey Autobus Act, N.J.S.A. 48:4–6, it was provided that a "consent" to operate buses "may be transferred by the holder thereof upon obtaining the approval of the board of public utility commissioners upon application to it by either the transferor or the transferee." The Public Utility Act, N.J.S.A. 48:3–1 et seq., provided that every sale or mortgage without approval should be void. The court held the mortgage void for want of approval and that the Trustee took title by operation of law on the theory that such transferability did not depend upon approval of the Commission.

On rehearing, petitioner cites two cases which squarely support its position. First National Bank of Weatherford, Texas v. Holliday, 5 Cir., 47 F.2d 67, and Costello et al. v. Acco Transport Co. et al.,[1] decided by the Tennessee Court of Appeals, Western Division, at Jackson, October 14, 1949 (not published, so far as we are able to ascertain). Both cases involve the validity

1. No opinion for publication.

of a chattel mortgage upon a Certificate of Public Convenience and Necessity. In the former, the controversy, as here, was between the Trustee of the bankrupt mortgagor and the mortgagee. The decision sustained the validity of the mortgage under a state statute with a provision as to transferability not substantially different from the language of Rule 1(d) of the Interstate Commerce Commission.

In the Costello case, there was involved the same statute and Commission rule which we have here. A mortgage had been given upon a Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission. The controversy was between certain creditors of the mortgagor and the mortgagee and involved the identical question before us, that is, whether the mortgagee prior to approval by the Commission acquired a lien on or property right in the certificate. The court, in what we regard as a well reasoned opinion, decided in favor of the mortgagee.

In Breeding Motor Freight Lines, Inc., v. R. F. C. et al., 10 Cir., 172 F.2d 416, the court rejected a contention that a chattel mortgage given upon a Certificate of Public Convenience and Necessity was invalid on the ground that it was not authorized in advance by the Commission where the Commission subsequently approved by transfer.

In Watson Bros. Transp. Co., Inc., v. Jaffa et al., 8 Cir., 143 F.2d 340, at page 346, the court held that the holder of a Certificate of Public Convenience and Necessity could be required in a suit for specific performance to comply with his promise to transfer, and in so doing stated: "The mere fact that a contract or transfer is subject to the approval of a public agency is not a bar to a decree compelling a party to execute the documents necessary for the consummation of the contract or transfer. This principle is well established in the cases involving agreements to transfer liquor licenses, which, like the transfer in question here, must be validated by the licensing authority. [Citing cases.]"

In Rowe v. Colpoys, U. S. Marshal, et al., 78 U.S.App.D.C. 75, 137 F.2d 249, 148 A.L.R. 488, the court considered the question whether a license to sell alcoholic beverages issued by the Alcohol Beverage Control Board of the District of Columbia was subject to levy under an execution. The transfer of the license was controlled by a statute. The court, in holding the license amenable to levy, stated, 137 F.2d at page 251: "But, whether it is a right, the transfer of which is controllable by a court or by some other authority, it is, nevertheless, a valuable right, with attributes of property and transferable value, in the market of alcoholic beverage distribution."

Another line of cases which by analogy strongly negative the premise that a Certificate of Public Convenience and Necessity is stripped of its proprietary worth and therefore incapable of transfer, in the absence of Commission approval, are the so-called Board of Trade cases. Hyde v. Woods, 94 U.S. 523, 24 L.Ed. 264; Page v. Edmunds, 187 U.S. 596, 23 S.Ct. 200, 47 L.Ed. 318; Board of Trade of the City of Chicago et al. v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533. The relevancy of these cases resides in the holding that a Board of Trade membership was transferable property, notwithstanding the numerous restrictions which were imposed upon the members' right to sell in the absence of approval by certain designated authority.

In the Page case, supra, the court's reasoning appears pertinent to the situation before us. The court, 187 U.S. at page 601, 23 S.Ct. at page 202, stated: "The appellant could have sold his membership, the purchaser taking it subject to election by the exchange, and some other conditions. It had decided value. * * * It was property and substantial property to the extent of some amount, notwithstanding the contingencies to which it was subject. In other words, the buyer took the risk of the contingencies."

In the Chicago Board of Trade case, supra, the court in a similar situation held the membership to be an "incorporeal

right and property, which would pass to the trustee of the bankrupt, subject to the rules of the board." [264 U.S. 1, 44 S.Ct. 233.] The court held as it previously had in the Page case that the membership passed to the Trustee under Sec. 70, sub. a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5), because it was property which the owner prior to bankruptcy "could by any means have transferred." Thus, the membership passed to the trustee because it was property capable of being transferred by the bankrupt prior to adjudication, and this in spite of the fact that a transferee could not have become a member until his right to do so had been approved in accordance with the rules of the Board. The same reasoning applied to the situation before us strongly indicates that a certificate is transferable property and, if so, it is subject to sale or mortgage. The transferee, however, would acquire the right to operate under the certificate only upon approval by the Commission.

Moreover, the court in the Chicago Board of Trade case not only held that the membership was property which passed to the Trustee but that certain lien claimants were entitled to be satisfied prior to any realization by the Trustee. By rule, one of the conditions as a prerequisite to the right of transfer was that the member have no outstanding claims or contracts held by members of the association. The bankrupt member was indebted to other members of the Board who claimed a lien to the extent of such indebtedness. The validity of the lien was sustained by the court. In other words, the court held that title passed to the Trustee subject to the existing lien.

Previously we agreed with the Trustee's contention that there was no property right or interest in a Certificate of Public Convenience and Necessity which, in the absence of approval by the Commission, could be conveyed, and therefore no lien attached by reason of a chattel mortgage. Upon further consideration, we now reach an opposite conclusion. Upon reason and authority we think it clear that such a certificate is endowed with a proprietary interest capable of transfer. Like the Board of Trade memberships it passed to the

Trustee in Bankruptcy because it was transferable property, and being transferable property we are not able to discern any logical basis why it could not properly become the subject matter of a valid chattel mortgage.

It is called to our attention that the Trustee sold the operating rights evidenced by the certificate in question for a sizeable sum and then joined the purchaser in obtaining the approval of such sale by the Commission. This serves to emphasize the fallacious position of the Trustee formerly embraced by this court that the certificate represented no proprietary right.

The previous opinion in this matter, rendered March 17, 1949, is withdrawn, and all orders entered pursuant thereto are vacated and set aside. The order appealed from is

Affirmed.